LANDERS *v.* CITY OF MUSKEGON.

MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—"ACCI-
DENT"—EXPOSURE.

> A city fireman does not receive an "accident" resulting in
> his death within the workmen's compensation act, where
> he is drenched while attempting to put out a fire on a
> vessel and a few hours later is again drenched by a sud-
> den rush of water from the deck, and later dies of pneu-
> monia due to the drenching and exposure, it not being an
> unusual occurrence for firemen to get wet in fighting
> fires, even though the disease germs were dormant in his
> system and were aroused to activity by his exposure.[1]

Certiorari to Industrial Accident Board. Submitted
April 20, 1917. (Docket No. 146.) Decided June 1,
1917.

Mary B. Landers presented her claim for compen-
sation against the city of Muskegon for the accidental
death of her husband in defendant's employ. From
an order granting compensation, defendant brings
certiorari. Reversed.

*Cross, Vanderwerp & Foote,* for appellant.

*Sutherland, Johnson & Sessions,* for appellee.

BIRD, J. Claimant's husband, William Landers, was
employed in defendant's fire department. On the
morning of December 30, 1915, the department was
called upon to extinguish a fire in the hold of the
steamer Nyack, which was being wintered in that port.
The boat stood out of the water about 40 feet, and
more or less of the water thrown from the hose would
strike the side of the boat and splash back onto the

---

[1] On construction and effect of workmen's compensation acts
generally, see comprehensive note in L. R. A. 1916A, 23.

firemen.  By reason of this, the deceased became very wet.  He was on duty nearly 12 hours before the fire was extinguished.  The next morning he was taken ill, but kept at his work until January 2d, when a physician was called and diagnosed his illness as lobar pneumonia.  On January 13th he died.  Claimant afterward made an application to the industrial accident board for compensation, and after the usual proceedings were had she was allowed the death award, provided in such cases, of $7.81 per week for a period of 300 weeks, and also the further sum of $70.90 for doctor's services, medicines, and hospital charges.

The defendant questions the validity of this award on the following grounds:

(1) Because no accident occurred to William Landers, husband of claimant, that either directly or indirectly caused the pneumonia from which he died.

(2) Because the severe wetting and physical exhaustion suffered by William Landers was a necessary incident to his employment as fireman, and cannot be said to have been an accident within the meaning of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5423 *et seq.*).

(3) Because the deceased, William Landers, suffered no injury arising from any accident whatever.

(4) Because the pneumonia from which William Landers died was not due to an accident, but was in the nature of an occupational disease.

The events which caused the death of Landers, undoubtedly, arose out of and in the course of his employment, but did those events constitute an accident within the meaning of the compensation act?  An "accident" is defined, in *Fenton* v. *Thorely & Co.*, 72 L. J. K. B. 790, as follows:

"The expression 'accident' is used in the popular and ordinary sense of the word as denoting an unlooked for mishap or an untoward event which is not expected or designed."

This definition is approved in *Adams* v. *Color Works,* 182 Mich. 165 (148 N. W. 485, L. R. A. 1916A, 283, Am. & Eng. Ann. Cas. 1916D, 689).

Landers was employed as a fireman. It was a part of his regular duties to go to fires and help extinguish them. In doing so, it was not an unusual thing for him to get wet. Not only does the proof show, but we think it is a matter of common knowledge, that firemen are subjected to exposure and drenching while attempting to extinguish fires. The engineer of the department testified:

"It was nothing unusual to get wet, but we don't get wet though at all fires. We never get wet intentionally, nor we don't wet each other. We do everything possible to keep from getting wet."

Mr. McShannock, one of the firemen, testified:

"It is no unusual occurrence for us to get wet; the men are bound to. We wear oilskin coats, hats, and rubber boots. We don't get as wet as we did at this fire every time."

We must therefore conclude that pneumonia was brought on, not by an unexpected event, but by an event which was an incident to his regular employment.

At about 11 o'clock in the forenoon, there was a sudden rush of water from the upper deck, which fell onto and drenched the firemen as they were working around the boat. This is assigned as the unexpected event which constituted an accident. The uncontradicted proof is that they were wet through two or three hours before this took place. We think this incident should be classed among the ordinary ones attending the duties of a fireman, and not as an accident.

Dr. Durram, who attended the deceased, testified:

"The cause of death was lobar pneumonia. Lobar pneumonia is a disease condition caused by the diplococcus germ. This germ may lay dormant in the sys-

tem.  In fact, no doubt some of the people in this room have the germ in their system, and do no harm until some intervening cause arouses it to activity.  The drenching and physical exhaustion and exposure would bring the pneumonia."

If it can be said in the present case that the diplococcus germ was dormant in the system of the deceased, and that it was aroused to activity by his exposure at the fire, the case must fail, because the thing which aroused the germ into activity was caused by events which were incident to his regular employment, and not by the unusual and unexpected event.

The award made by the industrial accident board must be reversed and set aside.

KUHN, C. J., and STONE, OSTRANDER, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.