## BRODIN'S CASE.

### Hancock.     Opinion December 11, 1924.

*Under the Workmen's Compensation Act if no answer is filed the Industrial Accident Commission in proceeding upon the petition may treat the allegations of fact which are well pleaded in the petition as admitted and make such award as the facts so stated in the petition will support. Accident is a befalling; an event that takes place without one's forethought or expectation; an undesigned, sudden and unexpected event; an occurrence to be accidental must be unusual, undesigned, unexpected and sudden.*

The word "accident" in the Workmen's Compensation Act is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed. An injury need not necessarily have a traumatic origin in order to entitle the injured employee to compensation.

Cases arising under accident policies which insure the policy holder against injuries sustained through external, violent and accidental means are not necessarily applicable to cases arising under the Compensation Act. Accident insurance cases have to do with the contract and the intention of the parties. Cases under the Compensation Act deal with the intent of the legislative body.

Cases of occupational disease cannot be said to have arisen from accidental causes since they are generally the result of long continued processes of absorption of a poisonous substance into the system, they lack the element of "sudden or unexpected event."

In this case, from the weight of authority and by reason of the humane and liberal construction to which the Compensation Act is entitled, the plaintiff was entitled to recover.

On appeal. The claimant was in the employ of the State Highway Commission receiving daily wages and in addition thereto was furnished board and lodging by the Commission. The water supplied by the Commission for the use of the camp was taken from a nearby spring or brook, and plaintiff drank the water and became seriously ill with typhoid fever which incapacitated him for labor. The question at issue was as to whether the injury was accidental within

the meaning of the Compensation Act.    Compensation was awarded
and an appeal taken from an affirming decree.    Appeal dismissed
with costs.    Decree below affirmed.

The opinion states the case.

*Sewall C. Strout*, for claimant.

*Ransford W. Shaw, Attorney General and Clement F. Robinson,
Deputy Attorney General*, for the State Highway Commission.

SITTING:    CORNISH, C. J., PHILBROOK, DUNN, MORRILL, WILSON,
DEASY, JJ.

PHILBROOK, J.    This is a Workman's Compensation case coming
up on appeal by the State Highway Commission in whose employ the
claimant was engaged when he suffered the conditions for which he
claims compensation.

Briefly stated, the record discloses that the claimant while thus
employed was paid daily wages and in addition thereto was furnished
board and lodging by the Commission at a camp located near the
road which was then in process of construction under the direction
of the Commission.    The water which was supplied by the Commis-
sion for use at the camp was taken from a nearby spring and brooks.
Brodin drank the water and became ill with typhoid fever which
incapacitated him for labor.    Because of this incapacity he claims
compensation.    In allowing his claim the Chairman of the Industrial
Accident Commission made distinct findings of fact and law.

FINDING OF FACT.

The Chairman found as a matter of fact that the claimant con-
tracted typhoid fever from using the water furnished him by the
State Highway Commission, while in its employ, and that as a result
of said injury he was totally incapacitated from labor for a certain
period of time.    This decision upon a question of fact, in the absence
of fraud, is final.    Public Laws 1919, Chap. 238, Sec. 34.    Moreover,
the State Highway Commission neglected to file the answer required
by Public Laws, 1919, Chap. 238, Sec. 32.    "If no answer is filed no
facts will appear to be actually in dispute although the petitioner
may apprehend, and so state in his petition, that a dispute exists;
and the Chairman in proceeding upon the petition may treat ·the
allegations of fact which are well pleaded in the petition as admitted,

and may make such award as the facts so stated in the petition will support, after the analogy of the procedure upon bills in equity taken pro confesso for want of appearance or answer." *Morin's Case*, 122 Maine, 338. For these reasons, and because the record sustains the finding of fact, we are not justified in disturbing this finding.

### FINDING OF LAW.

The Chairman found as a matter of law that the typhoid fever so contracted is a personal injury by accident arising out of and in the course of the claimant's occupation and is therefore compensable. Upon appeal this court may reverse or modify the decree, from which appeal is taken, but such reversal or modification must be based upon an erroneous ruling or finding of law. Public Laws, 1919, Chap. 238, Sec. 34.

The appellant urges that the finding of law in the case at bar is erroneous. It says that the sole question is whether the claimant sustained a "personal injury by accident" within the terms of the Maine Workmen's Compensation Act. It demands a negative answer to this question on the ground that there was in fact no outside, visible, causative accident, or, in other words, that the typhoid fever from which the employee suffered had no traumatic origin. It categorically claims that under our compensation statute, in the absence of an outside, visible, causative accident, or one of traumatic origin, the disease of typhoid fever is not compensable.

At the outset it should be clearly stated that the record in this case does not disclose that the employee suffered from an occupational disease, nor from an incipient or existing disease which was aggravated by exposure, strain, or other impelling circumstances. Discussion of these elements, therefore, is not necessary. Nor are we called upon to say whether the injury arose out of and in the course of the employment. Upon these points the appellant issues no challenge. Referring again to its brief, the sole question is whether the claimant sustained a "personal injury by accident."

In searching the authorities upon this point we recognize that the provisions of the British Workman's Compensation Act find place more or less completely in the various legislative acts in this country, and hence the English decisions upon disputed questions

are entitled to great respect. It should be further noted that in six States of our Union, viz., Arkansas, Florida, Mississippi, Missouri, North Carolina and South Carolina, there are no compensation laws, so that the courts of those States afford us no aid. In the remaining forty-two States, and in the Federal Act, there are differences in provisions as to injuries which are compensable, depending upon whether the injury was or was not "injury by accident" or "accidental injury," or whether the "accidental" element is omitted from the act. In twenty-nine States, including Maine, the injury must be "by accident" or "accidental" in order to be compensable. In the remaining thirteen, as well as in the Federal Act, the words "accidental" or "by accident" do not appear.

We, therefore, face the inquiry whether, under the facts in this case, the employee as a matter of law, is entitled to compensation because of a personal injury by accident; or, stating the question in another way, may the disease in this case, not occupational, be said to have arisen from an accident. Hence, the interpretation and application of the words "accidental" or "by accident" must govern in the settlement of this question. The courts are not in harmony as to this interpretation. Obviously it will be impracticable, within the limits of this opinion, to discuss all the cases on one side or the other. We shall cite only what we deem to be leading cases.

For a definition of the word "accident" we content ourselves with that already adopted by our own court. "As defined by lexicographers, an accident is a befalling; an event that takes place without one's forethought or expectation; an undesigned, sudden, and unexpected event. Its synonyms include mishap, mischance, misfortune, disaster, calamity, catastrophe." *Patrick's Case*, 119 Maine, 510, where much attention is given to a definition of the word. "By all authorities an occurrence to be accidental must be unusual, undesigned, unexpected, sudden." *Brown's Case*, 123 Maine, 424. In the latter case the court said "The word is commonly predicted of occurrences external to the body, e. g., wrecks, explosions, collisions, and other fortuitous mishaps in the world of things about us." But neither in these cases, nor in any case, has our court declared as a positive and general rule that a fatal disease, not occupational, nor one pre-existing and aggravated by exposure, strain, or other impelling circumstances, is non-compensable, unless preceded by and growing out of a traumatic injury.

*Ferris* v. *Eastport*, 123 Maine, 193, relied upon by the appellant, is easily distinguished from the case at bar. That is a case where a member of a fire company became suddenly drenched with slush from the roof of a burning building, contracted a cold, which was followed by pneumonia, and incapacity for work resulted. The court denied compensation, stating as a conclusion, "It cannot be said to be unusual, or unexpected, or untoward, or unforeseen, that firemen get wet in winter as well as in summer. On the contrary it would be unusual if they did not, each in their turn, get wet. Other firemen were wet at the same time and from the same causes. Can it be said that such occurrences are accidents? We think not under the act." Thus it will be seen that in the *Ferris Case* there is lacking the very essence of the definition of "accident" given in *Brown's Case*, supra, viz., "unusual, unexpected."

*Ballou's Case*, 121 Maine, 282, is one where a workman, while escaping from a burning mill, inhaled flame, smoke and gas, that produced a condition in the lungs which later resulted in pneumonia and death. Compensation was allowed. In that case no attempt was made to define "accident," but the court held that the evidence showed a line of symptoms, never before present, which continued to afflict the deceased to a greater or less degree from the time of the fire until his death by pneumonia; and further held that there was evidence to show a direct, causal relation between the fire and the death of the decedent.

*Larrabee's Case*, 120 Maine, 242, is one where an employee, while removing ashes from under the boilers in a mill, breathed gas fumes from the ashes. Bronchial pneumonia developed and death followed. The evidence disclosed that the deceased was a man in good health who had never had any illness prior to the day of the alleged injury except from ordinary "colds." Our court referred to the case as one where "the deceased, through accident, inhaled an excessive amount of the gases." , Here, also, no attempt was made to define "accident," nor was any traumatic cause ascribed, but compensation was allowed.

It may be safe to say that among English cases which deal with an interpretation of the expressions "accidental injury" and "injury by accident" no one is more frequently cited than *Fenton* v. *Thorley*, A. C., (1903), 443. This case was considered after Parliament amended the Workman's Compensation Act of 1897 which act is

entitled "An Act to amend the law with respect to compensation to workmen for accidental injuries suffered in the course of their employment." The first section of the Act, Sub. 5, 1, declares that if in any employment to which this Act applies personal injury by accident arising out of and in the course of the employment is caused to a workman "his employer shall be liable to pay compensation." Lord Macnaghten comes to the conclusion that the expression "accident" is used in the popular and ordinary sense of the word as denoting an unlooked-for mishap or an untoward event which is not expected or designed. Lord Shand said also that the word "accident" in the statute is to be taken in its ordinary and popular sense, and thought that it denoted or included any unexpected personal injury resulting to the workman in the course of his employment from any unlooked-for mishap or occurrence. It was also pointed out that cases were numerous depending upon policies of insurance intended to cover injuries described as arising from accidental, violent, and external causes, but Lord Macnaghten said these cases did not throw much light upon the pending question because they turned on the meaning and effect of stipulations for the most part carefully framed in the interest of the insurers. No one of the learned expounders of the law in that case even hinted that an injury must have a traumatic origin in order to entitle the injured employee to compensation. On the contrary the effect of the interpretation in that case found an echo in a case decided two years later by the same tribunal.

*Brintons* v. *Turvey*, A. C., (1905), 230; 2 American and English Annotated Cases, 137. In the latter case a workman contracted anthrax while engaged in handling wool in the course of his employment. He was awarded compensation. Lord Macnaghten, abiding by the definition of "accident" in *Fenton* v. *Thorley*, supra, said "it was an accident that the noxious thing that settled on the man's face happened to be present in the materials which he was engaged in sorting. It was an accident that this noxious thing escaped the down draught or suck of the fan which the Board of Trade, as we are told, requires to be in use while work is going on in such a factory as that where the man was employed. It was an accident that the thing struck the man on a delicate and tender spot in the corner of his eye. It must have been through some accident that the poison found entrance into the man's system. . . . . I cannot doubt that the man's death was attributable to personal injury by accident

arising out of, and in the course of his employment.  The accidental character of the injury is not, I think, removed or displaced by the fact that, like many other accidental injuries, it set up a well-known disease which was immediately the cause of death."  Judgment was favorable to the injured employee.  Examination of the cases decided by the English Court during the twenty years which have intervened since the decision of *Fenton* v. *Thorley*, supra, has not disclosed any reversal of the position there taken.  Certainly there has been no intimation that an accidental injury must have a traumatic cause in order to render it compensable under the British Workman's Compensation Act.

Before leaving the English Courts it is proper to again remark that in that country, as well as in our own, we find many cases arising from accident insurance policies.  These policies usually insure the policy holder against injuries sustained through external, violent and accidental means.  The accident insurance cases have to do with a contract and the intention of the parties; the cases under a compensation act deal with the intent of the legislative body.

Nor should we overlook cases like *Steel* v. *Cammell, Laird & Co.*, 1905, 2 K. B. 232, a lead poisoning case.  It was there held that a disease which is the result of a long continued process of absorption of a poisonous substance into the system is not an accident.  The grounds on which this holding was placed are two-fold, one that notice of the injury could not be given because the time at which the injury occurred could not be fixed;  the other that the disease was a consequence of the employment engaged in and was naturally expected to result in some instances.  These cases do not bear upon the case at bar.  They fall within the line of occupational disease cases.  Such diseases lack the element of "sudden, unexpected event."  *Patrick's Case*, supra.

Coming to courts in our country, cases are multitudinous and rapidly increasing where decisions have been rendered alone upon the phase of the various Workman's Compensation Acts now under consideration. We must content ourselves by citing only a few of the leading cases.

*Vennen* v. *New Dells Lumber Co.*, (Wisconsin), 154, N. W. 640. The act in that State, Sec. 2394-3, provides that liability for compensation shall exist against an employer for any personal injury accidentally sustained by his employee.  The defendant supplied drinking water to its employees for their use while on the premises.  The water so supplied became infected with typhoid germs.  Vennen

drank the water during the hours and on the premises when and where he was employed. Death from typhoid fever ensued. The defendant urged that the contracting of typhoid fever under the facts and circumstances of that case did not show that his death was due to an accidental occurrence. But the court said: "The term 'accidental,' as used in compensation laws, denotes something unusual, unexpected, and undesigned. The nature of it implies that there was an external act or occurrence which caused the personal injury or death of the employee. It contemplates an event not within one's foresight and expectation resulting in a mishap causing injury to the employee. Such an occurrence may be due to purely accidental causes or it may be due to oversight and negligence. The fact that deceased became afflicted with typhoid fever while in defendant's service would not in the sense of the statute constitute a charge that he sustained an accidental injury, but the allegations go further and state that this typhoid affliction is attributable to the undesigned and unexpected occurrence of the presence of bacteria in the drinking water furnished him by the defendant as an incident to his employment. These facts and circumstances clearly charge that Vennen's sickness was the result of an unintended and unexpected mishap incident to his employment. These allegations fulfill the requirement of the statute that the drinking of the polluted water by the deceased was an accidental occurrence while he was performing services growing out of and incidental to his employment.

*Wasmuth, Endicott Co.*, v. *Karst* (Indiana), 133 N. E., 609. The act in that state, as amended in 1919, Sec. 76-d, provides that "injury" and "personal injury" shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form except as it shall result from the injury. Karst was employed in the factory of the company. The company furnished its employees, while at work, with drinking water from a well in its factory. The water became contaminated with typhoid germs. Karst, while working for the company, used the water for drinking purposes, without knowledge of its pollution, thereby contracting typhoid fever, and was confined to his bed for several weeks. In considering the contention whether Karst received a personal injury by accident the court said, "This Court, in determining questions of liability under the Workman's Compensation Act has adopted the following definition.

"An accident is any unlooked-for mishap or untoward event not expected or designed. Applying this definition to the facts disclosed by the evidence in this case, it is clear that the entering of typhoid germs into appellee's intestines, by reason of drinking the polluted water furnished him by appellant for that purpose, while in its employ, may rightfully be termed an accident. . . . . Did the disease result from an injury by accident, arising out of and in the course of the employment? If it did not, by the express provision of the statute no compensation can be awarded. The injury, however, need not be produced by violence, as our statute, unlike those of some other states, does not so provide. It suffices in that regard, whatever the accident may have been, if it produced a lesion or change in any part of the system which injuriously affects any bodily activity or capability. . . . . The fact that the accident involved in this case occurred while appellee was engaged in quenching his thirst, rather than in the actual performance of some duty which he owed appellant under his employment is not a matter of control-ling importance as it is recognized that such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of the employment."

*Fidelity &c. Co.* v. *I. A. C. of California*, 171 Pac., 429. This case arose under the so-called Boynton Act as it stood in 1914 where under Section 12 of the act it was provided that compensation should be granted for personal injuries by accident arising out of and in the course of the employment. The record shows that while using wood alcohol for cleaning purposes the eyes of the employee were exposed to and came in contact with the vapor of alcohol in unusual quantities causing sudden impairment of vision. It was held that this was not an occupational disease and that compensation should be awarded. Insurance cases were there discussed but the court held that the expression "injuries sustained by accident" in the Compensation Act is to be given the broader interpretation in harmony with the spirit of liberalty in which it was to be conceived, so as to make it applicable to injuries to workmen which are unexpected and unintentional and which thus come within the meaning of the term "accidents" as it is popularly understood, citing the British cases which we have above cited.

Other cases supporting the doctrine that traumatic injuries need not be requisite to° compensation for injured workmen are found in many states.

On the other hand in *Richardson* v. *Greenburg*, (decided in 1919), 188 App. Div. 248, 176 N. Y.; supp. 651, the court said:

"Had it been the intention of the legislature to include within the meaning of 'injury,' or 'personal injury' all diseases of whatever nature, it would not have been necessary expressly to mention, in addition to 'accidental injuries,' 'such disease or infection as may naturally and unavoidably result therefrom.' This express mention of a disease which is the consequence of injury would seem to exclude all diseases which are not. The particular disease must 'result' from 'accidental injury,' that is to say, it must be preceded by such injury, and therefore cannot constitute the injury, which it follows. Evidently 'disease' and 'accidental injury' are in contrast with each other, so that the former is never comprehended by the latter. The Workman's Compensation Law was drawn with painstaking care, and it cannot be supposed that words and phrases found therein, particularly in the defining clauses, were needlessly, meaninglessly, or obscurely used. The plain meaning of its words, without the aid of judicial interpretation, induces the conclusion that the legislature intended to make compensable no condition or death resulting from disease, unless the disease itself followed a traumatic injury or other injury not partaking of the nature of a disease." In this case death was caused by the disease of glanders contracted through inhalation of the bacteria of glanders and the court, holding that the death did not result from an accidental injury, denied compensation.

The position taken by the New York Court is also supported by decisions in other jurisdictions, which are entitled to great consideration, holding that compensation is not authorized where incapacity results from disease, such as pneumonia, *Linnane* v. *Aetna Brewing Co.*, 91 Conn., 158; *Landers* v. *Muskegon*, 196 Mich., 750, 163 N. W., 43; or typhoid fever, *State* v. *District Court*, 138 Minnesota, 210, 164 N. W., 810. But in the majority of jurisdictions, and we think by weight of authority, it has been held that the phraseology of the compensation acts is broad enough to include all non-occupational diseases although not preceded by traumatic causes provided it is clearly shown that the disease arose out of and in the course of the

employment and .was unusual,. undesigned, unexpected and sudden. *Ann Cases*, 1918 B., 328; *Vennen* v. *New Dells·Lumber Co.*, supra; *Glasgow Coal Co.* v. *Welsh*, 1916, 2 A. C.; *Brintons* v. *Turvey*, supra.

We hold, therefore, that in the case at bar, from weight of authority and by reason of the humane and liberal construction to which the Compensation Act is entitled the mandate must be,

> *Appeal dismissed with costs.*
> *Decree below affirmed.*

WILSON, J.   Concurring in result.

I concur in the result of the opinion, but inasmuch as it involves a departure from what I apprehend has been the common understanding of the scope of the Workmen's Compensation Act, and the language of the opinion, unqualified,. seems to me to extend the provisions of the Act beyond the. legislative intent, .I am impelled to express my reasons for concurring only in the result.

No terms of these Acts has been so prolific of discussion and of almost futile attempts at definition as the phrase "personal injury. by accident" or its corresponding provision for the grounds on which compensation is based, unless it be the phrase immediately following, "arising out of and in the course of his employment."

The English Act of 1897 is generally accepted as the basis for the provisions of the first Acts adopted in this country and Justice PHILBROOK has referred us in the opinion to the several English cases which are usually cited, when the meaning of the phrase "personal injury by accident" is under consideration.

In *Fenton* v. *Thorley*, App. Cases, 443, (1903)—a case of hernia— and in the *Brinton Case*, App. Cases 230 (1905)—a case of anthrax— there was, as one noble Lord expressed it, much poring over the word accident by learned counsel, which evolved some subtle reasoning and which seemed to him entirely over the heads of workmen and employers and even of Parliament; but after the several Lords who participated in the appeal had separately expressed their views, no more tangible result was evolved than that the word "accident" in the English Act was "used in its popular and ordinary sense of the word as denoting an unlooked for mishap or untoward event which is not expected or designed."

It should be noted also that in each of these cases it was expressly stated by some of the Lords participating in the decision that the doctrines there laid down should not be construed as holding that all diseases contracted in the course of employment are to be regarded as accidents within the meaning of the Act.

There is much force, I think, in the view of the Connecticut Court that a disease was not intended to be included in these Acts under the term "personal injury." *Lenane* v. *Aetna Brewing Co.*, 91 Conn., 158. The Acts of New York, Indiana, Minnesota and no doubt others were apparently drawn with a view to excluding incapacity resulting from disease unless it was definitely traceable to some injury resulting from an accident.

But where the grounds of compensation are as in our Act simply "personal injury by accident" the authorities are in almost hopeless confusion as to its meaning at least as to the application of any definition that can be said to be generally accepted. This court has already adopted one which appears to me as satisfactory as any to be found in the decided cases. In substance, a personal injury by accident is an injury resulting from some unusual, unexpected or unknown mishap or occurrence, as an unexpected fall, or some unusual or unexpected injury resulting from some known and ordinary but sudden occurrence, as hernia or the bursting of a blood vessel from a strain incurred in the ordinary course of the employment. *Patrick's Case*, 119 Maine, 510; *Brown's Case*, 123 Maine, 424.

At the outset we should put out of our mind the concept that the words "by accident" denote only the manner in which the injury was received, that is, by chance, accidentally. In our Act, if not in all, it obviously denotes a distinct event, a happening, an occurrence of which notice can be given as required by Section 17 of the Act and distinct from the injury itself.

It is in view of this, and to avoid the extension of the doctrine laid down in the *Fenton and Brinton Cases*, supra, to include contagious diseases generally, that the English courts, since the decision of those cases, have in defining the word accident added this limitation also: "Unless the applicant can indicate the time, the day, circumstance and place in which the accident occurred by means of some definite event, the case cannot be brought within the purview of the Act." *Eke* v. *Hart-Dyke*, 2 K. B., (1910), 677. In this case it is well to note the later attitude of the court towards the Fenton

and Brinton cases cited by Justice PHILBROOK in the opinion: ''In the face of that particular finding of fact (referring to the findings in the court below that the entering of the anthrax germ in the Brinton case into the employee's eye was an accident) the court held that it was an accident. But I think all the Judges carefully abstained from lending color to the suggestion that a mere disease which you could not say was contracted at any particular time or at any particular place by a particular occurrence was an accident which entitled a man to compensation."

The Court of Appeals had already delivered itself to the same effect in still an earlier case. *Broderick* v. *London City Council,* 2 K. B., 807 (1908).

Appreciating, as it seems to me, the necessity of some such limitation to exclude contagious diseases generally, under the broad definition of the term, "accident," found in some of the authorities, the New Jersey Court and those of several other of the States have also adopted it. In *Liondale Bleach Works* v. *Riker,* 85 N. J. L., 426, 429, the court says: "The English Courts seem at last to have settled that where no specific time or occasion can be fixed upon as the time when the alleged accident happened there is no injury by accident within the meaning of the Act. This seems a sensible working rule especially in view of the provisions of the statute requiring notice in certain cases within fourteen days of the occurrence of the injury—a provision which must point to a specific time."

This "sensible rule" has also been expressly adopted in Illinois where the court said: "If an injury can be traceable to a definite time and place and cause, and the injury occurs in the course of the employment, the injury is accidental within the meaning of the Act, and the obligation to provide compensation arises." *Baggot Co.* v. *Ind. Com.,* 290 Ill., 533. Also see *Prouse* v. *Ind. Com.,* 69 Colo., 382, and *Iwanioki* v. *State Indus. Acc. Com.,* 104 Or., 650, 665 where the courts of these States have followed.

To avoid compensation for contagious diseases, some of the States have apparently attempted to so frame their Acts as to accomplish this purpose. The Minnesota Act after the phrase "personal injury caused by accident" defines accident as "an unexpected or unforeseen event happening suddenly and violently or without human fault and producing at the time injury to the physical structure of the body." Under this provision it was held that typhoid fever was not

included, on the ground that the taking of typhoid germs into the system did not happen suddenly and violently nor from any event which produces an injury to the physical structure of the body. *State ex rel* v. *Faribault Woolen Mills Co.*, 138 Minn., 210.

In New York and Indiana the provisions are somewhat similar, enacted apparently with the same legislative intent; yet the courts of those States have taken opposite views as to their effect. In the New York Act, it is provided, "that personal injury shall mean only accidental injuries . . . . and such diseases or infections as may naturally and unavoidably result therefrom."

In Indiana the provision is: "that personal injury by accident shall not include diseases in any form except it result from the injury."

The New York Court in interpreting its provision, however, in a case where glanders was contracted by a workman during his employment held it was not covered by the Act of that State. *Richardson* v. *Greenburg*, 176 N. Y. Sup., 651; while the Indiana Court, though the provisions of its Act seem much stronger, held that typhoid fever was included within its Act, but by a process of reasoning which to my mind well illustrates the extent to which some courts are inclined to go under the provision common to most of these Acts, that they shall be interpreted liberally, in order to carry out what are termed its human purposes. *Wasmuth-Endicott Co.* v. *Karst*, 77 Ind., Appl., 279. It seems to me the New York interpretation of its Act is based on much sounder reasoning.

It is true that Michigan and Wisconsin have under provisions similar to those of our Act held that typhoid fever contracted in the course of employment entitled the employee to compensation.

The Michigan decision, *Frankamp* v. *Fordney Hotel Co.*, 222 Mich., 525, is based on the ground that taking in typhoid germs by the drinking of water not known to be contaminated was an unexpected occurrence and likened it to eating tainted food from which ptomaine poisoning resulted or the inhaling of septic germs from the handling of hides in unloading a car on a particular day.

The Wisconsin case, *Vennen* v. *New Dells Lumber Co.*, 161 Wis., 370, the employee sued at common law for injuries caused by negligence of defendant company in polluting drinking water furnished at its plant. The defendant replied that the injury alleged was

covered by the terms of the Compensation Act of that State which provided an exclusive remedy for "personal injuries accidentally sustained . . . . in performing services growing out of and incidental to his employment." The plaintiff demurred to this answer and the court below overruled the demurrer on the ground that the disability from typhoid fever was within the Compensation Act. The Appellate Court sustained the ruling of the court below, but only upon the ground that the taking in of the typhoid germs was an unexpected occurrence, and the declaration contained sufficient allegations to show the injury suffered in the form of the disease was accidentally sustained.

A dissenting opinion, however, analyzed the case and from the various decisions both here and in England showed the danger of such a general rule and that it was contrary to the latest views of the English Courts and many courts of eminent standing in this country which hold that the accident must be shown to have happened at some definite time of which notice can be given. The Wisconsin Statute provides that within thirty days after the occurrence of the accident notice must be given in writing stating the time and place of the injury. As the dissenting Justice then says: "This must mean that the legislature had in mind something definite and tangible, something that could be located as to time and place when it used the word 'accident'."

The majority opinion in this case, it seems to me, fails to distinguish between accident as indicating the manner in which an injury occurred, and as a definite though unexpected event or occurrence from which the injury resulted, which distinction has for some time been followed in the English Courts. *Broderick* v. *London City Council*, 2 K. B., 807 (1908); *Steel* v. *Cammell Laird & Co.*, 2 K. B., 232 (1905); *Martin* v. *Manchester Corporation*, 5 B. W. C. C., 259; *Findlay* v. *Tullamore Union*, 7 B. W. C. C., 973 in which case it was held that typhoid fever was not shown to be an injury by accident within the meaning of the Compensation Act.

All other compensation cases involving diseases to which my attention has been called can either be distinguished by some provision of the Act or the injury can be assigned to a definite event or occurrence in point of time and place.

To hold that every non-occupational contagious disease, the exposure to which could be fairly said to be measurably increased by reason of the conditions under which the employee is obliged to

work,—as would occur in practically every manufacturing plant or wherever employees are brought together in one room or building in large numbers and so be one of the obvious risks of his employment,— constitutes an injury by accident because the infection through the respiratory organs is unexpected and unforeseen, which seems to me to be the logical consequence of the doctrine laid down in the opinion,— unless there is such force in the word "sudden" as would exclude the very case under consideration,—would involve an extension of the provisions of the Act, to which I cannot yet agree, and open a Pandora's Box out of which would fly a multiplicity of new problems to plague us.

From the language of the Acts themselves, the history and purpose of this class of legislation, and upon what seems to me the best reasoned opinions of the various courts, my conclusion is that the Legislature contemplated by the term, "accident," an unusual, unexpected and unforeseen event or happening or an unusual and unexpected result of an ordinary occurrence, but in either event referable to a definite time or a particular day and place of which notice can be given in accordance with the Act.

It is not the disease itself which constitutes the accident, but the event or happening which caused the transmission of it, or the inciting of it due to some idiopathic conditions.

A contagious disease, therefore, which may have been contracted at any time within a period of a week or ten days, even though unexpectedly, cannot be said to be the result of an accident within the meaning of the Act, nor can its inception even be said to be "sudden" and so brought within the definition given in the opinion.

For these reasons if the case at bar were to be decided upon the evidence, my conclusion would be that the appeal should be sustained as the evidence does not show any definite event or happening in point of time to which this disease can be traced. However, upon the record of the case this question does not seem to me to be open to the State.

The petition sets forth the infection by typhoid germs by accident from drinking polluted water and on a definite date, viz. July 14th, 1923, and the evidence shows it was furnished by the employer in connection with his employment.

No answer was filed. The facts, therefore, stated in the petition cannot now be denied by the respondent. No further proof of them was required. *McCollor's Case*, 122 Maine, 136; *Morin's Case*, 122 Maine, 338.

Upon these facts thus admitted, I think the petitioner was entitled to compensation; although if issue had been joined, no definite time could have been fixed from the evidence in the case when the alleged accidental transmission of the germs took place, and no unusual event or unforeseen occurrence as happening on a definite date and constituting an accident within the meaning of the Act, could have been found.