SCHLECHTWEG *v.* MCQUAY-NORRIS MANUFACTURING
COMPANY

[No. 17,438.   Filed January 28, 1946.]

*Stoops & Stoops,* and *Owen S. Boling,* all of Indianapolis, for appellant.

*Ralph B. Gregg* and *Edward J. Fillenwarth,* both of Indianapolis, for appellee.

HAMILTON, J.—This is an appeal from an award of the Full Industrial Board, denying appellant compensation upon her application filed under the provisions of the Indiana Workmen's Occupational Diseases Act.

In her application, Form 115, appellant alleged that she was employed by appellee from February 20, 1943, until November 19, 1943; that the character of her illness or disease contracted during said employment was, and is, bronchitis and nasal pharyngitis, resulting in bronchiectasis.

A hearing was held before a single member of the Industrial Board who made an award denying compensation. Appellant appealed to the Full Industrial Board and, after a hearing, the following finding and award was made by the Full Industrial Board, to wit:

"The full Industrial Board of Indiana having heard the arguments of counsel and having reviewed all of the evidence and being duly advised in the premises, now finds: that the plaintiff was in the employ of the defendant on February 20, 1943, at an average weekly wage of $32.24; that the plaintiff worked for the defendant from February 20, 1943, up to and including November 19, 1943, with the exception of approximately one

month; that the plaintiff did not work for the defendant during the month of July, 1943, as she was incapacitated during that period of time due to the fact that she had an operation performed for the removal of her tonsils; that the plaintiff's employment with the defendants ended November 19, 1943, at which time the plaintiff became incapacitated; that pursuant to a disagreement between the parties, the plaintiff herein filed a Form 115 Application which is an application of disabled employee for compensation under the provisions of the Indiana Workmen's Occupational Diseases Act, with the Industrial Board of Indiana on April 25, 1944.

"The full Industrial Board now further finds for the defendant against the plaintiff in that the plaintiff's disability to work was not directly nor indirectly the result of any occupational disease arising out of and in the course of her employment with the defendant, nor did the condition of bronchiectasis which the plaintiff has, follow as an incident of an occupational disease arising out of and in the course of her employment with the defendant, nor did the condition of bronchiectasis which the plaintiff has, follow as an incident of an occupational disease arising out of and in the course of her employment with the defendant.

"It is therefore considered, ordered and adjudged by the Industrial Board of Indiana that the plaintiff take nothing by her form 115, which is an application of disabled employee for compensation under the provisions of the Indiana Workmen's Occupational Diseases Act, filed with the Industrial Board of Indiana on April 25, 1944, and that she pay all costs, if any are taxed in this cause."

The error assigned is that the award of the Full Industrial Board is contrary to law for the reason that the evidence in favor of appellee was, and is, devoid of any probative value.

The only question presented to us for review is whether the evidence in support of appellant's claim is

so conclusive in character that the finding against her could have been reached only through the exercise of improper considerations or influences. If the substantial evidence in the record is conflicting, it was within the exclusive province of the Industrial Board, as the trier of the facts, to weigh the evidence and determine with whom the truth lay, and its finding in that respect cannot be disturbed upon appeal or our judgment as to the weight of the evidence substituted for that of the Industrial Board. *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. (2d) 219; *Warren* v. *Indiana Telephone Co.* (1940), 217 Ind. 93, 26 N. E. (2d) 399; *Fuller* v. *Delco Remy Division of General Motors Corp.* (1945), ante, p. 272, 63 N. E. (2d) 542. If such evidence is without conflict and wholly in favor of the appellant and complete in all essentials necessary to a recovery, the Industrial Board had no right to disregard and ignore it through prejudice, bias, mere caprice, or other improper considerations, and under such circumstances the award will be set aside upon appeal. *Bell* v. *Goody Goody Products Co.* (1945), *ante,* p. 181, 63 N. E. (2d) 147.

An occupational disease is defined in § 6 of the Indiana Workmen's Occupational Diseases Act, § 40-2206, Burns' 1940 Replacement as follows:

"(a) As used in this act, the term 'occupational disease' means a disease arising out of and in the course of the employment. *Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable,* except where such diseases follow as an incident of an occupational disease as defined in this section.

"(b) A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and

the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. *The disease must be incidental to the character of the business and not independent of the relation of employer and employee.* The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence." (Our italics.)

In the case of *Chev. Mun. Div. of Gen. Mot. Corp.* v. *Hirst* (1943), 113 Ind. App. 181, 189, 46 N. E. (2d) 281, this court held that while bronchiectasis is a disease common to the public and one to which the public generally is exposed outside of any employment, it may be and is compensable, if it follows as an incident of an occupational disease, as defined by the statute, which disease arises out of and in the course of the employment under circumstances consistent with the requirements of § 40-2206, *supra.*

Reviewing the evidence contained in the record in connection with the statutory definition of what constitutes an occupational disease, and as construed in the Hirst case, *supra,* we find that there is substantial evidence to establish the following facts:

Appellant, a resident of Fayette County, Indiana, applied for work in appellee's plant at Connersville, Indiana, in February, 1943. On February 18, 1943, she was given a pre-employment medical examination by appellee's examining physician, Dr. R. H. Elliott, of Connersville, Indiana, who reported his findings as negative with respect to appellant's nose, throat, and

chest.   February 20, 1943, appellant went to work for appellee at its Connersville plant as a grinder at an average weekly wage of $32.24.   There was no exhaust fan or ventilator connected with the grinder at which appellant worked to remove the dust and particles of steel, grit, and dust arising from the operation performed by appellant, and there was a large amount of such dust, which appellant necessarily breathed.   In May, 1943, appellant began coughing, which kept getting worse.   She went to a Dr. Smelzer of Connersville, who advised that she have her tonsils removed, which was done in July, 1943.   After resting four or five weeks, appellant returned to work but her coughing continued and became progressively worse.   On September 17, 1943, appellee sent appellant to Dr. Francis B. Mountain of Connersville for a 90-day period of treatments for her nose.   Dr. Mountain diagnosed her condition at that time as an irritated bronchitis and nasal pharyngitis which causes constant coughing and expectoration.   During the forepart of November, 1943, Dr. Mountain advised appellee to transfer appellant to another department in appellee's plant, which was done, but appellant's condition did not improve and upon the advice of Dr. Mountain that she was unable to continue working, appellant quit her employment with appellee on November 19, 1943.   She has been unable to work since said date.

Appellant testified that at and prior to the time she began working at appellee's plant, she did not have a cough and had never been troubled with a cough prior to said date.   She also produced other witnesses who gave similar testimony.   To contradict such testimony, appellee produced witnesses who worked with appellant at appellee's plant and who testified that at the time appellant went to work for appellee, she coughed and

continued to cough throughout her employment and that her cough was as bad when she commenced working as it was when she quit.

To support her claim from a medical standpoint, appellant used as witnesses, Drs. Francis B. Mountain and James S. McBride.

Dr. Mountain testified that the first time he saw appellant she had a very marked cough and definite hoarseness. Her nose and throat and nasal pharynx were all infected and irritated by an irritation of the mucous membrane. Dr. Mountain treated appellant from September 17, 1943, until March 25, 1944, at intervals of from two to five days per week. Her condition did not respond to any treatment that was given. She coughed up sputum and her condition became progressively worse during her employment with appellee. She had rhinitis, which is an inflammation of the mucous membrane. Rhinitis can be caused by exposure to a foreign substance. Any irritating thing will cause rhinitis. Dr. Mountain further testified that he felt appellant's condition was due to the fact that she continued to work. He stated that bronchiectasis could result from such a condition. Pharyngitis and bronchitis can come from irritations of foreign substances. Since appellant did not respond to treatment, Dr. Mountain stated that he did not have any question in his mind but that appellant's condition was probably due to the work she was doing. The witness further stated that he had examined many persons employed by McQuay-Norris Mfg. Co. in the past several years and that appellant was the only case he had handled involving laryngitis and bronchitis. He stated that these diseases are common to the general public and are not particularly occupational in character. The witness stated that the reason appellant's condition was due to her work and that such work

aggravated her condition was because of the fact that she had a type of pharyngitis and bronchitis which would not respond to the ordinary routine of treatments of such diseases. The whole respiratory tract was involved.

Dr. McBride testified that he was a specialist in the treatment of lung diseases. He examined appellant on October 9, 1944. At that time she had no tuberculosis of the chest. He found no objective trouble about her in a pathological way. The witness examined an X-ray picture taken by Dr. Beeler August 9, 1944, after an opaque oil had been injected into the bronchial tree which revealed a thickening and irregular enlargement of the trunk and base of the lungs which is called bronchiectasis. It is not an occupational disease. In view of the fact that appellant stated that she was well when she went to work, Dr. McBride thought that the fact that she worked might have some causal connection; it at least could be a causal factor in it. Carborundum dust is a substance which would have a definite effect on the nose and throat. Bronchiectasis is not restricted to an occupational disease but is common to the general public and is more common than bronchitis and it can be found in a person who is not employed in industry. Dr. McBride had no way of knowing the exact cause of bronchiectasis. He stated that he found no evidence of silicosis in appellant's case and found no involvement of the lungs. He stated that he had no idea of the actual cause of bronchiectasis as there have been several hundred different causes suspected but he felt a survey of appellant's working conditions might reveal a cause which could at least contribute strength to her bronchiectasis. Dr. McBride stated that if appellant had the same type of cough, which she is now suffering, at the time she commenced her employment, it would be

a fact to be seriously considered to determine whether her disease was occupational or not.

Dr. C. J. McIntyre, a witness for appellee, testified that he examined appellant on April 20, 1945, and from the continuous cough which was present during the examination and rales found in the base of the lungs, he assumed that appellant had bronchiectasis. Bronchiectasis is not a disease; it is a condition, a dilation of the bronchial tubes. This dilation is considered to be caused by a congenital defect in the structure of the walls of the bronchi plus the weight of the natural secretions of the bronchi, which produces dilation. It is quite common and so far as the witness knew is not caused by any particular industry and is not occupational. It is a slowly-developing process and rarely disabling. Appellant was not disabled when witness examined her. Bronchiectasis does not develop over a short period of time. If appellant had bronchiectasis, it would be a condition which had developed over a comparatively long period and longer than was given to the witness by appellant in reciting the history of her case. From the history of the employment and the facts given to the witness by appellant with respect to the conditions of her work, it was the opinion of the witness that her condition was not due to her work. There is no causal connection. Dr. McIntyre further stated that there are only two industrial diseases—silicosis and asbestosis—but many conditions assumed to be industrial are not. Dr. McIntyre further stated that he did not think that bronchiectasis could be an incident to an occupational disease. Bronchiectasis is caused by a congenital weakness, plus the weight of the natural secretions of the bronchi. Rhinitis and bronchitis are two affections which are common to the general public and they are not occupational diseases.

There is a difference between bronchitis and bronchiectasis; the former is assumed to be an inflammation of the bronchi, sometimes due to a bacterial infection of short duration and sometimes it is secondary to some other infection; bronchiectasis is disclosed by an X-ray. The witness stated that appellant's condition was due to some congenital condition.

. The foregoing resume of the testimony clearly discloses that the evidence upon the issue as to whether appellant had contracted an occupational disease as a result of her employment was sharply conflicting, especially the medical testimony. It was the exclusive province of the Industrial Board, as the trier of the facts, to weigh the evidence and decide the questions of fact. We are not permitted, under a long unbroken line of authorities, to substitute our judgment as to the weight of the evidence for that of the Industrial Board. Neither can we say that the conclusion reached by the Industrial Board was not supported by sufficient evidence or that the Board was influenced by caprice, prejudice, bias, or any other improper considerations in rendering its award. The burden rested upon appellant to establish the fact that she had contracted and was suffering from an occupational disease as defined by the statute, and this she failed to do. The evidence is not of such a conclusive character as to force us to a contrary opinion from that of the Industrial Board upon the questions of facts presented by the record.

The award of the Full Industrial Board is therefore affirmed.

NOTE.—Reported in 64 N. E. (2d) 664.