BARGER *v.* CITY OF SAGINAW.

WORKMEN'S COMPENSATION—ACCIDENT—CHANGE OF STATUTES AND COURT DECISIONS.

Award of workmen's compensation commission of the department of labor and industry, made in December, 1944, denying compensation because of lack of showing of an accident causing death of fireman occurring in January, 1943, is reversed for further proceedings before the workmen's compensation appeal board for reargument and new findings of fact and conclusions in the light of recent decisions involving changed provisions of the workmen's compensation act (CL 1948, § 411.1 *et seq.*, as amended).

DETHMERS, C. J., and CARR and KELLY, JJ., dissenting.

Appeal from Department of Labor and Industry. Submitted October 6, 1959. (Docket No. 5, Calendar No. 42,994.) Decided January 4, 1960.

Anna C. Barger, widow of George H. Barger, a captain in the fire department, presented her claim against the City of Saginaw for workmen's compensation because of husband's death from overexertion. Claim denied. Plaintiff appeals. Reversed and remanded.

*E. B. Reese,* for plaintiff.

*W. Vincent Nash,* City Attorney, and *Jack E. Kerr,* Assistant City Attorney, for defendant.

REFERENCES FOR POINTS IN HEADNOTES

58 Am Jur, Workmen's Compensation §§ 195, 196.
Accident as a necessary condition of compensation for injury in absence of explicit provision of statute in that regard. 94 ALR 584.

KELLY, J. (*dissenting*). Plaintiff's husband (hereafter referred to as deceased), an employee of defendant city for 23 years, had attained the rank of captain of the fire department at the time of his death.

Plaintiff's husband's death (January 29, 1943) was caused by coronary thrombosis. The deputy commissioner on March 22, 1944, denied compensation because "deceased suffered no accident while in the employ of said defendant city of Saginaw," and the compensation commission of the department of labor and industry affirmed the award. Upon leave granted, plaintiff appeals.

A heavy January snowfall necessitated the removal of a large quantity of snow from the city streets, and the director of public works requested the fire department chief to give assistance in washing the snow into the river and sewer at Battery park. The fire chief testified that it was customary for one city department to aid another and that he assigned deceased and 2 other members of his department to give the aid requested.

Deceased worked for 2-1/2 hours in 14-degree below zero weather flushing the snow into the sewer. He ordered the fireman in charge of the pumper to increase the pressure beyond hydrant pressure and, in order to direct the stream, deceased, and his 2 companions, took turns lying flat on the hose. The gauge on the pumper did not properly register pressure.

One fireman who worked with deceased flushing the snow testified that he did not notice any change in deceased's physical condition when they finished their 2-1/2 hours of work and had returned to the fire station. The other fireman stated that deceased's only complaint was that he was cold.

Deceased's work hours terminated when he returned to the fire engine house (January 19, 1943, at 8 a.m.) after flushing the snow.

The record sustains the commission's findings, as follows:

"About an hour or so later the decedent arrived home. He was supposed to be off duty from 8 a.m. January 19th to 8 a.m. January 20th. However, sometime around 3 o'clock Wednesday morning, January 20th, he was called out on a second alarm fire which he helped to fight up to about 6 o'clock that morning when he asked his chief, Frank W. Bender, to be relieved as he was chilled and complained about not having been able to get warm since he had been at the river the day before. He came home in a taxi. His widow was asked:

" 'Q. Did you notice anything about his condition when he returned home from the Barn fire on the 20th?

" 'A. When he come home, he had a kind of reddish look in his face and seemed to be chilled, but he didn't say anything to me until along about 5 o'clock in the afternoon. Then he went to bed and had chills, and he went to bed again at 9 o'clock at night. At 3:30 in the afternoon, he went and got his pay, and he come home and drank a cup of coffee for his supper, that's all.'

"Sometime around 3 o'clock the following morning, January 21, 1943, he was seized with a severe heart attack which was diagnosed as coronary thrombosis and he expired on January 29, 1943."

Dr. Raymond Moon, a heart specialist, testified he first met deceased when called to his home at 7:30 a.m., January 21, 1943, which was 4 hours after deceased had suffered a severe heart attack; that he ascertained he was suffering from coronary thrombosis and ordered his removal to the hospital where he remained until the time of his death. Dr. Moon also testified that "usually, in coronary thrombosis

there is a process going on in the coronary arteries for some little time before the acute, severe symptoms arise." Dr. Moon was questioned as follows and gave the following answers:

"Q. And if it were not for that incident down at Battery park that we have described and the going over to the second alarm fire, you as a medical man would be of the opinion that George Barger would have lived a much longer time?

"A. I would say that probably precipitated his attack which resulted in his death.

"Q. And without which he would have lived an indefinite period afterwards?

"A. Quite likely, if he avoided any strenuous effort."

Dr. Georgia Mills, who was a deputy health officer of defendant city, was the only other doctor who testified. An examination of her testimony discloses she offered nothing helpful in determining this appeal.

Plaintiff claims the court erred in not awarding compensation because death was "caused or precipitated by stress, strain and over-exertion imposed on a pre-existing heart condition"; that "his disability and subsequent death was caused by events incident to his unique employment and by unusual and unexpected events"; and that "the break or failure of the pressure gauge on the booster pump" constituted "a fortuitous happening within the meaning of the workmen's compensation act."

The commission in its opinion stated:

"We do not believe that the difficulties faced by Captain Barger in the performance of his duties in the early hours of January 19th and again in the early hours of January 20th were of such a character as to be considered as unusual and unforeseen and thus warranting a finding that they were accidental factors within the meaning of the

compensation act. His was a perilous occupation calling for the performance of his duties even in the face of grave danger and under almost inhuman weather conditions. He was carrying on his work in a manner and under circumstances which he knew from experience were a part of his job as a defender of the lives and property of the citizens whom he served so well and for so many years. When consideration is given to the duties of a fireman we do not believe that the occasion of getting water into his boot was an accident within the meaning of the act. It was a natural incident of his employment and a hazard to which all fire fighters are subjected, see *Landers* v. *City of Muskegon,* 196 Mich 750 (LRA 1918A, 218), and *Savage* v. *City of Pontiac,* 214 Mich 626."

In regard to plaintiff's claim that the failure of the gauge on the booster pump constituted a fortuitous happening justifying an award, suffice it to say that the record does not disclose that decedent relied upon the gauge as he directed activities in flushing the snow.

In the case referred to by the commission, namely, *Landers* v. *City of Muskegon,* 196 Mich 750 (LRA 1918A, 218), our Court held that a fireman does not sustain an "accident" resulting in death within the workmen's compensation act, where he is drenched while attempting to put out a fire on a vessel; a few hours later is again drenched by a sudden rush of water from the deck, and later dies of pneumonia due to the drenching and exposure, it not being an unusual occurrence for firemen to get wet in fighting fires, even though the disease germs were dormant in his system and were aroused to activity by his exposure.

The right to compensation is governed by the law applicable at the time of death (January, 1943), and, therefore, PA 1943, No 245, effective July 29,

1943, and subsequent amendments would not apply, and the 2 cases referred to in Justice Edwards' opinion would not control.

The decision of the compensation commission is based upon findings of fact supported by testimony, and such findings are, in the absence of fraud, conclusive and binding on the Court. *Hayes* v. *Detroit Steel Casting Co.*, 328 Mich 609; *Steede* v. *Michigan Gas & Electric Co.*, 303 Mich 147; *Wilson* v. *Doehler-Jarvis Division of National Lead Co.*, 353 Mich 363.

The award should be affirmed. Costs to appellee.

Dethmers, C. J., and Carr, J., concurred with Kelly, J.

Edwards, J. Because of a lack of a no-progress rule in this Court for many past years, the appeal in relation to this 16-year-old claim is apparently valid in this Court. It is now finally brought to issue before us by the adoption in 1958 of our no-progress rule (Court Rule No 70B).[*]

This is a heart attack case. The death occurred in January, 1943. The claim was denied by the workmen's compensation commission in December, 1944, under the statute and the interpretations of the statute then applicable. Leave to appeal was granted by this Court February 21, 1945. Between the happening of the death which forms the basis for this claim and the hearing of this appeal in this Court, both the pertinent provisions of the statute[†] and the case law pertaining thereto as they bear on this set of facts have been materially changed. *Sheppard* v. *Michigan National Bank*, 348 Mich 577; *Coombe* v. *Penegor*, 348 Mich 635.

---

[*] See 354 Mich xiii.—Reporter.

[†] For references to the original act and its amendments, see PA 1912 (1st ex sess), No 10 (CL 1948, § 411.1 *et seq.*, as amended [Stat Ann 1950 Rev § 17.141 *et seq.*]).

This matter should be referred to the workmen's compensation appeal board, successor to the administrative agency making the determination 15 years ago, for reargument and new findings of fact and conclusions in the light of the decision of this Court in the 2 cases cited above.

Reversed and remanded for further proceedings before the workmen's compensation appeal board.

SMITH, BLACK, VOELKER, and KAVANAGH, JJ., concurred with EDWARDS, J.