Joseph R. BERRY, Appellant,

v.

OWENSBORO ICE CREAM & DAIRY PRODUCTS et al., Appellees.

Court of Appeals of Kentucky.

Feb. 28, 1964.

Nathan B. Cooper, Owensboro, for appellant.

James M. Graves, Boehl, Stopher, Graves & Deindoerfer, Louisville, for appellees.

STEWART, Judge.

This is an appeal from a judgment of the Daviess Circuit Court affirming the opinion and order of the Workmen's Compensation Board which dismissed an application of Joseph R. Berry for compensation.

A summary of the facts, about which little if any dispute exists, is that appellant, Joseph R. Berry, who had worked as a truck driver for appellee, Owensboro Ice Cream & Dairy Products, since 1952, was transferred to the job of shipping clerk in the spring of 1958. His duties in this capacity required him to go in and out of a refrigeration room many times each day. The temperature in this room was between ten and eighteen degrees below zero.

After Berry had worked at his new position for approximately three months, he began to complain of asthmatic symptoms. About the middle of May, 1959, he left his work, asserting his asthmatic condition disabled him to the extent he could not perform the type of work in which he was engaged. It was shown Berry was able bodied and in good health prior to 1959. He was still suffering from his impairment three months after he quit his job.

His application for compensation was filed July 6, 1959, and he alleged therein he was permanently and totally disabled as a result of bronchial asthma. He claims this is an occupational disease within the purview of KRS 342.316(1) and that it arose out of and the course of his employment with appellee. The Board found against him upon the ground that his disease was not occupational in character but, on the contrary, that it was an ordinary disease that may be contracted at any time or at any place.

KRS 342.316(1), the governing statutory provision, reads: "'Occupational disease' as used in this chapter means a disease arising out of and in the course of the employment. Ordinary diseases of life to which the general public is equally exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section."

The testimony of two medical experts constitutes the decisive evidence in this case. Both Dr. John D. Lovett, who appeared in behalf of appellant, and Dr. E. R. Gernert, who was a witness for appellee, were of the opinion that Berry's asthmatic impairment was of an infectious nature, i. e., caused by a germ or virus. Dr. Lovett stated, however, that an individual's resistance is lowered by periodic exposures to adverse elements such as rigorous coldness. He believed "that an individual who goes in and out of a freezing unit is more susceptible to respiratory infection than one who maintains a more constant environment."

Dr. Gernert testified that some people, when subjected to a low and then a high degree of temperature, excessive cold followed by extreme heat, could have a seizure of asthma " * * * but that this is not the cause of the asthma. * * * In other words, they have got some other factor there that is causing the asthma and if they didn't have that then this change in temperature would not bother them. * * *"

Although this is a case of first impression in Kentucky, a number of foreign cases illustrate the application of the ordinary disease exception. The Supreme Court of Illinois, in construing an occupational disease statute, which for all practical purposes

is identical with ours, denied coverage in a case involving facts similar to those now before this Court. See Stewart Warner Corporation v. Industrial Commission, 376 Ill. 141, 33 N.E.2d 196.

In the Stewart Warner Corporation case, the employer was engaged in the manufacture of refrigerators and the deceased's employment, which lasted over a period of about two years, required him to go in and out of a heated testing room some two hundred times a day. The temperature in the testing room ranged from ninety to one hundred and ten degrees Fahrenheit and the temperature of the building outside the testing room was kept some thirty to sixty degrees lower. There was also the additional factor of sulphur dioxide which was sometimes said to escape into the testing room. Prior to the deceased's employment he was active, strong and well. At the end of six months he began to cough and lose weight and thereafter he became so enfeebled he quit his work. Later, he was hospitalized and an examination of his sputum disclosed tubercle bacilli. His death soon occurred, the cause being diagnosed as pulmonary tuberculosis.

The decedent's widow and dependent children, who filed a claim for compensation benefits, contended the intermittent changes of temperature to which the deceased was exposed on the job, coupled with the inhalation of sulphur dioxide fumes, operated to weaken the deceased's condition and thereby activate within him previously latent tubercle bacilli, causing him to contract tuberculosis. The employer argued that the disease from which the deceased employee suffered was an ordinary disease of life and, therefore, was excluded from coverage by the statute.

In denying compensation, the opinion stated:

"The medical experts agree that tuberculosis is a germ disease; that it is caused by tubercle bacilli, that after the germ enters the body it may remain inactive for years and possibly never cause trouble. Medical science has not been able to determine when a tubercular germ enters the body nor the length of time it lies dormant before becoming active. There are persons of all ages and in all walks of life who have tubercular bacilli in their bodies.. There is no proof that the germ infection was a hazard of the work in which deceased was engaged. Proof that the hazards of the employment produced a weakened physical condition and a lowered resistance to germs does not establish that such a hazard was the direct cause of the tuberculosis. It is well known that there are many things that weaken the physical condition and lessen the resistance to germs which are not in any way related to an employment. * * *"

In each of the following cases compensation was denied under occupational disease statutes where the claimant contended the adverse conditions of the environment in which the claimant worked produced an occupational disease: Blake v. Bethlehem Steel Co., 225 Md. 196, 170 A.2d 204; Russell v. Auburn Central Mfg. Co., 107 Ind. App. 17, 22 N.E.2d 889; Schlechtweg v. McQuay-Norris Mfg. Co., 116 Ind.App. 375, 64 N.E.2d 664; Star Publishing Co. v. Jackson, 115 Ind.App. 221, 58 N.E.2d 202; McGill Mfg. Co. v. Dodd, 116 Ind.App. 66, 59 N.E.2d 899; Landers v. Muskegon, 196 Mich. 750, 163 N.W. 43, L.R.A.1918A, 218; and Sanford v. Valier-Spries Milling Co., Mo.App., 235 S.W.2d 92.

The recent New York case of Conroy v. Rupert Fish Co., 8 App.Div.2d 553, 183 N.Y. S.2d 332, is an interesting decision on the subject of causal connection and bears upon the facts of the case at bar. In that case the employee claimed to have contracted pneumonia and then tuberculosis as a direct result of his work which required him to handle frozen fish and to go continuously in and out of cold-storage freezers. The New York court recognized that pneumonia and tuberculosis are ordinary diseases of life

and held, furthermore, that the employee there had failed to establish the necessary causal connection between the work he did and the disease he asserted he contracted.

In view of the medical testimony and of the authorities herein discussed, there can be little doubt that infectious bronchial asthma is an ordinary disease of life to which the public is equally exposed. There is no contention that appellant contracted the germ or virus while on the job. The only on-the-job element developed in this case is the fact that his resistance may have been lowered by many daily exposures to temperature changes. Appellant's condition, therefore, falls within the statutory exclusion, and in order to bring it out of the exclusion, he was obliged to prove that his condition followed as an "incident of an occupational disease." KRS 342.316(1). In this respect it is our opinion he failed to produce evidence of sufficient persuasive force to compel a finding in his favor.

Wherefore, the judgment is affirmed.