## MAMIE TAYLOR'S CASE.

Kennebec.        Opinion July 11, 1928.

*F. Harold Dubord,* for petitioner.
*Andrews, Nelson & Gardiner,* for respondents.

SITTING: WILSON, C. J., DUNN, DEASY, STURGIS, BARNES, BASSETT, PATTANGALL, JJ.

BASSETT, J.   Appeal from the decree of a single justice affirming the decision of the Chairman of the Industrial Accident Commission granting compensation for the death of the petitioner's husband, Fred J. Taylor.

The petitioner claimed that the death was due to a strain from lifting a slate slab while at work. The defendants contended there was no evidence of accidental injury or that death was caused by the strain.

The commissioner after hearing found, "It is obvious that the heavy lifting in question was a material factor in hastening his death, or else that there was no causal connection whatever between the two, and that his death, so soon following, was a mere coincidence at that time. Taking into careful consideration all the factors in this admittedly rather obscure case, it seems more probable than otherwise that some causal connection did actually exist and it is so found."

It is well settled law:

That in the absence of fraud the decision of the commissioner upon all questions of fact shall be final. *Maine Workmen's Compensation Act,* R. S., 1916, Chap. 50, Sec. 34, as amended by Public Laws 1919, Chap. 238; *Butts' Case,* 125 Me., 245.

That there must be some competent evidence to support a decree. It may be slender but it must be evidence, not speculation, surmise, or conjecture. *Mailman's Case,* 118 Me., 172; *Butts' Case,* supra.

That the decision of the commissioner will not be reversed where the finding is supported by rational and natural inferences from proved facts. *Mailman's Case,* supra; *Patrick* v. *Ham,* 119 Me., 510; *Hull's Case,* 125 Me., 135.

That an occurrence to be accidental must be unusual, undesigned, unexpected, sudden. *Brown's Case,* 123 Me., 424; *Brodin's Case,* 124 Me., 162, 171.

While the word accident is commonly predicated of occurrences external to the body, and such external accidents may or may not cause bodily injuries, yet an internal injury that is itself sudden, unusual and unexpected is none the less accidental because its external cause is a part of the victim's ordinary work. *Brown's Case*, supra.

Our court has therefore held that a strain or exertion of a laborer while at his work, which caused a cerebral hemorrhage, *Patrick* v. *Ham*, supra; *Hull's Case*, supra; or acute dilatation of the heart, *Brown's Case*, supra; were accidents arising out of and in the course of employment.

Turning now to the instant case, the record shows that Taylor had been for a number of years employed as a general laborer in a concern doing a furniture and undertaking business and was at work with a fellow employee, named Pooler, putting a slate vault into a grave. The bottom slab of the vault was seven and one-half feet long, thirty-two inches wide and an inch and one-half thick and weighed about four hundred pounds. It had been tipped up on edge at the side of the grave to slide down into it, but it took an angle and the upper corner of one end and the lower corner of the other stuck in the frozen ground, wedging the slab. Taylor got down into the grave and lifting at the level of his chest one end of the slab, pivoted it on the other until the slab straightened and, both ends clearing, slid down into the grave. He made no complaint, remark or exclamation indicating that anything had happened, and continued to work with Pooler putting together the pieces of the vault until noon when they went back to the store.

In *Patrick* v. *Ham*, supra; *Brown's Case*, supra; and *Hull's Case*, supra, the workman was engaged in ordinary work and there was no evidence of any unusual, undesigned, unexpected or sudden occurrence in the course of it. In this case there appears to have been such an occurrence and an attempt by the workman to overcome it, so that the strain itself could be called accidental. But if the strain were not accidental, it is the unusual, undesigned, unexpected or sudden results of the strain, not necessarily the strain itself, which make the accidental injury necessary under the law.

The finding of the commissioner that there was in fact a strain is supported by the evidence.

What evidence of its result was before the commissioner? Taylor was forty-six years old, of normal weight, had been in good health without indication of heart, chest or any other trouble. He went to work on the vault about eleven o'clock in the forenoon of Tuesday, December 30. As he and Pooler went into the store at noon, Taylor indicated to an employee there was a pain in his chest. At dinner at his home he complained of similar pain and of difficulty in breathing. When he got back to the store at one o'clock, he tried to put coal into the furnace but had to give up and sit in a chair, complaining of pain in the chest. He went back later to the cemetery and helped close the vault. He ate no supper and remained at home the following day, suffering from pain in his chest. The next morning Doctor Poulin, the family physician and a physician and surgeon of twenty years' experience, was called in. He found Taylor groaning and holding on to his chest and gasping for breath. Examination disclosed no trouble with heart, lungs or abdomen. The doctor gave treatment to relieve pain and any indigestion, strapped the chest, and on the same and the next two days made visits, by which time the difficulty in breathing had begun to subside. Taylor said he felt better and the doctor did not call again. During the following week he was about the house but complained of pain in the chest. On Saturday afternoon of that week, January 10, starting to rise from his chair, he fell and died instantly.

The petitioner refused to permit an autopsy.

Dr. Poulin testified that in his opinion Taylor's death was caused by pulmonary embolism, i.e., the blocking of the pulmonary artery or some of its branches by a thrombus or blood clot; that a thrombus may be formed by anything that slows up the circulation and might be formed by an injury to the blood vessels caused by severe strain due to heavy lifting or over exertion; a thrombus could form in the heart because of severe strain or acute dilation; that it was possible and probable that he died of pulmonary embolism and in his opinion the lifting was a material factor in producing it.

Doctor Risley, called as an expert by the defendants, testified that an embolism would have been disclosed by an autopsy and without an autopsy the cause of death could not be determined;

that without the evidence of an autopsy he would not say whether he thought there was or was not an embolism or express an opinion as to the cause of death; that the pain in the side would perhaps indicate an embolism; that a thrombus could possibly, be formed by some injury, or by heavy lifting, and in the heart by such lifting under some circumstances.

The evidence of what was the actual injury or immediate cause of the death, as distinguished from the alleged initial cause, and of the period of time within which results appear varies with each case.

In *Patrick* v. *Ham*, supra, Patrick while lifting indicated there was something wrong, fell over, walked to the storeroom, became unconscious and died that evening without regaining consciousness.

In *Brown's Case*, supra, Brown while shovelling snow suddenly became dizzy, faint and short of breath and felt pain in the heart region, had to stop work and suffered some symptoms for three days when a doctor diagnosed the case as acute dilatation of the heart.

In *Hull's Case*, supra, Hull for several hours worked in a strained position turning jack screws under a heavy building. Immediately following his completion of the work he complained of not feeling well, worked on another job a half hour, collapsed, and three days later died of cerebral hemorrhage.

In these cases determination of the actual injury was based on diagnoses of physicians. In some of the cases, e.g. hernia, it has been based on an operation.

In *Frank* v. *Chicago, M. & St. P. Ry. Co.*, 207 N. W., 87 (S. D. 1926), the injury was a thrombus in the femoral vein in the upper part of the thigh resulting in varicose veins, the thrombus being due, as alleged, to the strain of work which required pushing a loaded wheelbarrow up an inclined plank. The court, while admitting that a distended blood vessel, if caused by strain and resulting in injury, is just as much an accident as a broken blood vessel so caused, held that the medical evidence did not bear out the conclusion of the arbitration board and industrial commissioner that the thrombus was due to the physical exertion as described. The court says, "The medical authorities say labor will

not cause a thrombus but that it results from infection. Even the lay mind knows that a clot of blood will not form suddenly from a strain . . . . The admissions of the doctors which appellant says support the findings of the board of arbitration and commission are (quoting) . . . . In the testimony of both it may be noted that the doctors say that work *might* cause the injury, neither express an opinion that it did . . . . In the light of common knowledge and all the circumstances of this case we do not feel that the findings of the board and the commissioner can be sustained."

The medical authority, as appears from the evidence of the cited and instant cases, concerning causation of a thrombus, differs. The cited case goes further in taking judicial notice of what "the lay mind knows" or of "common knowledge" than we can follow. Whatever may be the medical authority as to the causes of thrombus, and whether the evidence in the instant case or the cited case has the correct medical theory, the instant case must be determined upon the record before us and not upon the record before another court in another case. *Shaw's Case*, 126 Me., 572.

Prior good health is evidence to be taken into consideration and has been by this court. *Larrabee's Case*, 120 Me., 242, 245, *Ballou's Case*, 121 Me., 283, 285. So in *Poccardi* v. *Public Service Commission*, 84 S. E., 242 (W. Va.), L. R. A., 1916, 299.

A finding of the commission supported by the opinion of two physicians is based on some evidence. *Clark's Case*, 125 Me., 408, 410.

In the instant case there was an opinion of one doctor, not controverted by the other doctor. Nor was there any contradiction between them as to causes of thrombus. The opinion of the one physician in *Kelley's Case*, 123 Me., 261, as to whether the die had in fact struck the foot, was an entirely different opinion from that of Doctor Poulin in this case.

We think that the finding of the commissioner that there was some causal connection between the heavy lifting and the death of Taylor was based upon some competent evidence and the inferences drawn by the commissioner therefrom were reasonable and rational. *Martin's Case*, 125 Me., 49.

The defendants further contended that the petitioner prevented

the holding of an autopsy and so prevented the adduction of definite evidence as to the cause of death; that, while the Maine Compensation Act is silent as to autopsies, refusal to hold an autopsy is similar in principle to unreasonable refusal to submit to proper medical and surgical treatment. *Beaulieu's Case,* 124 Me., 83.

While in that case the court held that it must be a refusal to submit to proper medical or surgical treatment such as an ordinarily prudent man would submit to in like circumstances and whether or not there had been such an unreasonable refusal is a question of fact to be determined by the commissioner, and the finding of the commissioner that Beaulieu had not unreasonably refused was on the evidence justified; and while in the instant case the only evidence as to petitioner's refusal to permit an autopsy was her simple statement that she refused and there was no evidence as to whether her refusal was under the circumstances reasonable or unreasonable, a question which has arisen in some of the states where the Compensation act has provisions for autopsies, it is sufficient for this case to say that our statute has no provisions for an autopsy; and not permitting one to receive compensation for an injury which proper medical or surgical treatment would or might reasonably expect to terminate and not requiring a petitioner to consent to hold a post mortem examination to obtain evidence of the cause of death are not in principle the same.

*Appeal dismissed with costs.*
*Decree below affirmed.*