David G. MOORES

v.

**STRUCTURAL CONCRETE CORP. OF MAINE et al.**

Supreme Judicial Court of Maine.

July 25, 1969.

Berman, Berman & Simmons, by Jack H. Simmons, Lewiston, Linnell, Choate & Webber, by John R. Linnell, Auburn, for appellant.

Mahoney, Desmond, Robinson & Mahoney, by Lawrence P. Mahoney, Portland, for appellees.

Before WILLIAMSON, C. J., and MARDEN, DUFRESNE and WEATHERBEE, JJ.

WILLIAMSON, Chief Justice.

This case under the Workmen's Compensation Act (The Act) is before us on appeal by the employee from a pro forma decree of the Superior Court affirming the

decree of the Industrial Accident Commission. 39 M.R.S.A. Sec. 1 et seq.

■ The issues are whether, within the meaning of the Act, there was (1) an accident, and (2) an injury. We are concerned with the meaning of the words in Sec. 51, "a personal injury by accident arising out of and in the course of his employment."

The Commissioner in dismissing the petition said,

"In view of the fact that there was no slip and no fall, and pain which the employee felt came on while doing his regular work without the occurrence of any outside unusual event, and in view of the lack of evidence that there was any rupture of any portion of the body beyond the mere possibility described in the cross-examination quoted above, it is found as a fact that the employee did not sustain an injury within the meaning of the Workmen's Compensation Act, or any accident."

■ The findings of the Commission upon questions of fact are final, if supported by some competent evidence. Bernier v. Coca-Cola Bottling Plants Inc. (Me.), 250 A.2d 820, "It may be slender but it must be evidence, not speculation, surmise, or conjecture." Taylor's case, 127 Me. 207, 208, 142 A. 730; Tiko v. Hiram Ricker and Sons Inc., Me., 251 A.2d 510.

The facts established by the record are in brief as follows: The employee was unloading 95-pound bags of cement from a box car, "I picked up a bag of cement and hurt my back and sat down and rested for a while." It was part of his job to lift and carry the bags of cement. He did not slip. He carried out only three or four more bags and worked the rest of the day without any lifting. On the next day the back "kept getting worse". "I think 3 days (later) I reported for work. I left early every day because of it." After two or three weeks he returned to work at which time he was unable to work, and "my back started bothering again."

The osteopathic physician treating the employee testified in substance of the chief complaint of pain in the low back, that there had been a definite rotation of certain lumbar vertebrae to the right, and that "almost always in this type of injury there is a twisting type of lift which is right along with what he described to me"; that two weeks after the incident, June 10, he found "that the previous trouble had recurred"; that three days later "he was still having pain in the right low back down the leg to the ankle and at that time I told him to stop work until he was over this thing"; and that he last saw the employee on July 18. The physician further testified,

"Q On all of these visits were his complaints and your findings consistent with an injury occasioned in the manner he described it?

"A Yes.

"Q And, do you have any—do you have any prognosis on this young man for his back problem?

"A Well, there is some question in my mind and there is some question in Doctor Rock's mind as to whether or not this young man has a possible intervertebral disc injury. I have the copy here of Doctor Rock's report.

"Q This was also your prognosis, is that correct?

"A Yes. It may require surgery before this young man has a normal low back."

And with reference to a disc problem and the possibility of a rupture, the physician said:

"Q Your feeling is then that the capsule enclosing the nucleus pulposus must be ruptured totally before this can produce symptoms?

"A  I wouldn't want to definitely state that until I had seen the results of the myelogram, because I have seen other cases where there was referred pain to the sciatic nerve and even exploratory surgery showed that there was no rupturing—no bulging."

In our opinion the evidence permits no reasonable inference other than that the employee suffered an injury by accident.

In Taylor's case, supra, 127 Me. at 209, 142 A. at 731, we said, "While the word 'accident' is commonly predicated of occurrences external to the body, and such external accidents may or may not cause bodily injuries, yet an internal injury that is itself sudden, unusual, and unexpected is none the less accidental because its external cause is a part of the victim's ordinary work."  Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912, 13 A.L.R. 427; Brown's case, 123 Me. 424, 123 A. 421, 60 A.L.R. 1293.

The record fully supports the findings of "no slip and no fall" and that pain "came on while doing his regular work without the occurrence of any outside unusual event."

The case, of course, does not stop at this point.  The issue is whether there was any competent evidence from which the Commission could reasonably infer that the employee did not suffer internal injuries, if only to the extent of a sprain.  The evidence of the employee was direct and certain and stands unchallenged that his back was injured in lifting the bags of cement, and that the injury was "unusual, undesigned, unexpected or sudden" and hence "by accident."  *Taylor's Case.*

Granted that the physician did not tell with certainty the internal condition of the employee and that the prognosis is not free from question, nevertheless, the proof is certain and sure that there was injury internally.  Since this is so, there was an injury by accident.  To find otherwise places too great a weight on certainty in a field where probabilites are more likely to be expected.

The test then was not "that there was any rupture—beyond the mere possibility," but whether there was internal injury resulting from the lifting and accidental in nature.  Eliminate all reference to a rupture and there remains plain proof unchallenged of personal injury by accident arising out of and in the course of his employment.

The entry will be

Appeal sustained.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel be paid by the employer to the employee.

WEBBER, J., not sitting.

TAPLEY, J., sat at argument but retired before the opinion was adopted.