**Clarence F. TOWLE**

v.

**DEPARTMENT OF TRANSPORTATION, STATE HIGHWAY.**

Supreme Judicial Court of Maine.

April 8, 1974.

Calkins, Wuesthoff & Sunenblick by Stephen P. Sunenblick, Portland, for plaintiff.

Donald L. Beckwith, Dept. of Transp., Augusta, for defendant.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, WERNICK, ARCHIBALD, and DELAHANTY, JJ.

POMEROY, Justice.

Every word of the phrase "by accident arising out of and in the course of his

employment," [1] standing alone has a clear meaning.[2]

Put the words together and one produces the occasion for nearly as much litigation as was produced by the words "Congress shall make no law respecting an establishment of religion."! Constitution of the United States, Amendment I.

The words first appeared together in a Maine statute in 1915. P.L.1915, c. 295.

In the ensuing years to this date this Court has had occasion to interpret the phrase in Patrick v. J. B. Ham Co., 119 Me. 510, 111 A. 912 (1921); Brown's Case, 123 Me. 424, 123 A. 421 (1924); Bernier v. Coca-Cola Bottling Plants, Inc., Me., 250 A.2d 820 (1969); Taylor's Case, 127 Me. 207, 142 A. 730 (1928); Hull's Case, 125 Me. 135, 131 A. 391 (1925); McDougal's Case, 127 Me. 491, 144 A. 446 (1929); Crowley's Case, 130 Me. 1, 153 A. 184 (1931); Swett's Case, 125 Me. 389, 134 A. 200 (1926); McNiff v. Town of Old Orchard Beach, 138 Me. 335, 25 A.2d 493 (1942); Matthews v. R. T. Allen & Sons, Inc., Me., 266 A.2d 240 (1970), to name a few.

And these cases relate only to an interpretation of the word "accident"!

A list of cases relating to the interpretation of the words "arising out of and in the course of his employment" would be much longer than that above.

▄ A reading of the cases decided since 1915 leads us to conclude that the law of Maine now is that,

(a) there is an accidental injury where an external force is applied to an external portion of the body, Taylor's Case, supra;

(b) the term injury by accident includes the situation where internal parts of the physical structure break down under external force including the stress of labor, *Id.*; Matthews v. R. T. Allen & Sons, Inc., supra, 266 A.2d at 245–246;

(c) the internal incident need not have demonstrated itself by a dramatic, instantaneous effect upon the victim, McDougal's Case, supra, 127 Me. at 492;

(d) while the concept of accident is ordinarily understood as embodying a certain degree or element of suddenness in the occurrence and is frequently so defined, it is not always required that the occurrence be instantaneous, Brown's Case, supra;

(e) a petitioner is not required to demonstrate the injury was suffered at a particular moment while doing a particular act, Hull's Case, supra;

(f) a weakness in the bodily structure which is gradually worsened and breaks down finally in the stress of usual work may sometimes be an injury by accident, Bernier v. Coca-Cola Bottling Plants, Inc., supra;

(g) If the stress of labor aggravates or accelerates the development of a preexisting infirmity causing an internal breakdown of that part of the structure, a personal injury by accident occurs. Patrick v. Ham, supra, 119 Me. at 519, 111 A. 912.

This appeal from a pro forma decree affirming an Industrial Accident Commission holding that

"In the instant case, the condition probably arose out of and in the course of Mr.

---

1. 39 M.R.S.A. § 52.

2. *By* = in consequence or on the basis of.
*Accident* = an unintentional or unexpected happening that is undesirable or unfortunate.
*Arising* = to come into being.
*Out of* = from a source.

*Course* = a continuous passage through time or a succession of stages.
*Of his employment* = an occupation by which a person earns a living.
Random House Dictionary of the English Language.

Towle's employment as a sweeper operator. However, we are unable to find that the condition resulted from accidental injury, and we must, therefore, dismiss this petition,"

causes us to add this one more case to the already long list on the subject.

We deny the appeal.

Petitioner Towle was employed by the Department of Transportation, State Highway Commission, as the operator of a power broom or street sweeper.

He had been so employed for three summers.

To perform his work he was required to lean out the door of the sweeper to insure proceeding in a straight line. The machine was equipped with an overhead blower which caused cool air to strike his shoulder while he was operating the machine. The seat on which he sat was of hard rubber composition and was not equipped with springs.

In April, 1972, the petitioner became aware of an ache in his back, which he described as "as if you had a cold in your muscle," which increased in intensity to such an extent that on April 15 he sought medical advice for his ailment. In giving the history of his ailment to the physician whom he consulted, he did not describe any particular incident which had given rise to the back pain.

Upon examination the physician found a strain which he described as "the same type of muscle strain in his mid-back that you would find in a charley horse type thing at that time. Similar to what you find in a kid that had been maybe at a basketball game or football game."

In the opinion of that physician the muscle strain was the result of driving the sweeper.

Later the petitioner was examined by a physician specializing in orthopedic medicine. This physician received a history that as early as September of 1971, petitioner had complained of a dull ache between the shoulder blades each day at the end of his working day. When the work was discontinued in the late fall of that year he no longer continued to experience pain. However, when he returned to work on the sweeper in late March of 1972 he began having the same symptoms as previously known, i. e., pain between the shoulder blades and mid dorsal region which became progressively worse so that in mid-April he was caused to stop working.

An examination by this physician revealed minimal tenderness in the insertion of the rhomboid muscles to his scapula.

The diagnosis then reached by this physician was "chronic postural strain secondary to his position he assumed as the operator of the street sweeper."

The facts are not in dispute.

■ The issue clearly becomes, is one who suffers a postural strain over a period of time as a result of the attitude he is required to assume in carrying out his employment, the victim of a "personal injury by accident arising out of and in the course of his employment?"

In the instant case it is clear the postural strain was not traceable to any specific episode. Rather it gradually developed over a substantial period of time.

The back strain was clearly not the result of an accident in the sense of

"1. In general, anything that happens or begins to be without design, or as an unforeseen effect; that which falls out by chance; a fortuitous event or circumstance.

"2. Specifically, an undesirable or unfortunate happening; an undesigned harm or injury; a casualty or mishap.

"3. The operation of chance; an undesigned contingency; a happening without intentional causation; chance; fortune.

Century Dictionary." Patrick v. Ham, 119 Me. 511, 518, 111 A. 912, 915 (1921) [3]

That it did not demonstrate itself by a sudden dramatic effect upon the victim is not controlling. Matthews v. R. T. Allen & Sons, Inc., supra, 266 A.2d at 246.

We have always taken the position that

". . . disability caused by personal injury by accident arising out of and in the course of his employment, is a statutory prerequisite for the payment of compensation to an injured employee, this claimant's injury, from what in a like situation some judge phrased the insensible progress of occupational disease, was not as matter of law received by accident." Dillingham's Case, 127 Me. 245, 248, 142 A. 865, 866.

For an excellent example of a situation in which a pre-existing physical weakness, i. e., arteriosclerosis, when acted upon by a strain produces an unexpected or sudden occurrence such as a heart attack or a cerebral hemorrhage and is considered to be disability resulting from an accident, see Taylor's Case, supra.

In the instant case there was an insensible progress of an occupational disease, i. e., postural strain not manifested by a sudden or untoward event. The disease or physical condition was not one covered by 39 M.R.S.A. § 181 et seq., the occupational disease law. See 39 M.R.S.A. § 193.

There was, therefore, no compensable injury and the Industrial Accident Commissioner was correct in his conclusion.

We are aware that effective October 3, 1973, by the provisions of Chap. 389, Laws of Maine, 1973, the words "by accident" were stricken from the statute.

We need not concern ourselves with the effect of this amendment to the statute since the events with which we are here concerned occurred long prior thereto.

"A statute shall not have retrospective operation unless its terms are so strong, clear, and imperative, that no other meaning can be annexed to them, or unless the intention of the Legislature cannot be otherwise satisfied . . . ." Langley v. Home Indemnity Company, Me., 272 A.2d 740, 746–747 (1971).

See also State Compensation Insurance Fund v. Workmen's Compensation Appeals Board, 1 Cal.App.3d 812, 82 Cal.Rptr. 102 (1969).

The entry must be,

Appeal denied.

Ordered that an allowance of $350.00 to cover fees and expenses of counsel, plus cost of record, be paid by appellee to the appellant.

Five Justices concurring.

DUFRESNE, Chief Justice (dissenting).

Petitioner Towle, for two previous years during the period from April to October, had operated a power broom or street sweeper, without suffering any incapacitating accident. True, when interviewed by Dr. Thomas Martin, Jr. in connection with his physical disablement of April 13, 1972, Towle related that he had experienced shoulder and back pains during the last month (September) of the 1971 seasonal operation of the sweeper, but daily massages had kept the pain under control and, following his shift to his winter duties, the malaise had disappeared. When he resumed work on the sweeper in late March of 1972, however, he began having similar symptoms of pain between his shoulder

---

3. See also Brown's Case, supra, and Brodin's Case, 124 Me. 162, 126 A. 829 (1924), which analyzes Fenton v. Thorley, A.C., (1903), 443, and Brintons v. Turvey, A.D., (1905), 230; 2 American and English Annotated Cases, 137, and Steel v. Cammell, Laird & Co., 1905, 2 K.B. 232.

As our Court in Brodin's Case said, "*These cases do not bear upon the case at bar*." 124 Me. at 168, 126 A. at 832.

blades and mid dorsal region, which progressed to an acute stage on April 13, 1972, the pain being so severe that he had to discontinue his work.

The medical evidence diagnosed petitioner's disability as due to a postural strain. The record supports the fact that, in order to guide the sweeper for a proper performance of the work to be done, Towle had to assume a certain posture on the vehicle, and this positioning, combined with the steady bounce to which, as the operator of such a sweeper, he was subjected, together with the direct blowing of cold spring air down his neck and back from a blower installed in the cab for ventilating purposes and to keep the dust out, served in the instant case to cause the back strain which totally incapacitated Towle for work on April 13, 1972.

The Commissioner found that

*"[n]o specific incident caused this condition."* (Emphasis added.)

In denying compensation, he explained his decision in the following terms:

"In a Petition for Award of Compensation, the law requires a claimant to establish an accidental injury arising out of and in the course of employment before benefits may attach. These requirements are not in the alternative and each must be established.

"In the instant case, the condition most probably arose out of and in the course of Mr. Towle's employment as a sweeper operator. However, we are unable to find that the condition resulted from accidental injury and must therefore dismiss this pending Petition."

Thus, the Commissioner's ruling concedes that Towle's personal injury arose out of and in the course of his employment, but it denies recovery of benefits under our Workmen's Compensation Act on the ground that nothing in the evidence points to a specific occurrence, however slight, supporting an accidental injury, such as a greater than usual jolting on any given day or at any particular time, or some unusual lurch or other untoward event. His holding may be viewed, as the Court of Appeal of Louisiana, First Circuit, in Hargrave v. Travelers Insurance Company, 1966, La.App., 187 So.2d 8, saw it:

"[W]here symptoms of disability gradually appear, increasing imperceptibly until ultimate incapacity results, unless the legal requirement [of a specific incident] of an accident, however slight, is met, the condition must be deemed a noncompensable occupational disease, unless, of course, the condition falls within the category of occupational disease expressly designated by the statute as compensable."

I disagree with such an interpretation of our Act.

The Legislature did not define for us what it intended by the use of the words "personal injury by accident" as used in the context of 39 M.R.S.A. § 51. In Patrick v. Ham, 1921, 119 Me. 510, 111 A. 912, this Court reviewed the different definitions of the term "accident" given by several lexicographers. It did not establish as a prerequisite for the existence of a personal injury by accident that there be proof of a specific event to which the injury or death be attributable. In fact, it cited with approval the case of Hughes v. Clover & Clayton & Co., 1909, 2 K.B. 798, quoting from it as follows:

"A workman, whilst tightening a nut with a spanner, fell back on his head and died. A post-mortem examination showed that there was a large aneurism in the aorta, and that death was caused by a rupture of the aorta. The aneurism was in such an advanced condition that it might have burst while the man was asleep, and a very slight exertion or strain would have been sufficient to bring about a rupture. The trial judge found that the death was caused by a strain arising out of the ordinary work

of the deceased operating upon a condition of body which was such as to render the strain fatal, and held that it was an accident within the meaning of the law. This decision was upheld both by the court of appeal and the House of Lords."

In construing "injury by accident" similarly as the English Court had construed its Act in Hughes v. Clover & Clayton & Co., supra, the Court stated:

"That Patrick was suffering from diseased arteries pre-disposing him to cerebral hemorrhage is of no consequence in the case. That he might have died, or would have died in his bed, of cerebral hemorrhage, in a year or a week is immaterial.

The question before the Commission was whether the work that he was doing on the afternoon of October 13th, 1919, caused the cerebral hemorrhage to then occur. If so, we think it was an accident arising out of and in the course of his employment."

I must conclude that an "accident" in the legislative sense is an "unlooked for mishap or an untoward event which is not expected or designed," and where the body succumbs to strain or exertion arising from the performance of one's normal employment, i. e., where something goes wrong within the human frame itself, even though the strain or exertion be the result of the ordinary stresses of the employment, there is a personal injury by accident arising out of the employment when the required exertion becomes too great for the person doing the work, whatever may be the degree of exertion used. See, Ciuba v. Irvington Varnish & Insulator Co., 1958, 27 N.J. 127, 141 A.2d 761.

In Moores v. Structural Concrete Corp. of Maine, 1969, Me., 255 A.2d 892, the employee, while doing his usual work of lifting and carrying bags of cement, felt a back pain. He favored his back the rest of the day, and, even though he stayed away from work the next day, his back kept getting worse. Reporting for work after three days, he managed to stay on the job for two or three weeks by leaving early every day because of his back pain. Thereafter, "my back started bothering again" to the extent that he was unable to work. The Court concluded that the evidence permitted no reasonable inference other than that the employee suffered an injury by accident.

In Moores, the Court was dealing with a case in which the original pain came upon the employee while he was doing his regular work without the occurrence of any outside unusual event. Although disabling for the first few days, the pain did not, however, prevent Moores from resuming his employment, and it was only some two to three weeks later, when the pain had gotten progressively worse, that he was unable to continue working. The Court went on to say that, notwithstanding the physician did not tell with certainy the internal condition of the employee and his prognosis was not free from question, nevertheless, the proof was certain and sure that there was injury internally and, since this is so, there was an injury by accident.

In the instant case, the proof was definite, and so concluded the Commissioner, that there was internal injury suffered in the performance of the usual duties of the petitioner's employment from the very beginning in March, 1972. True, it was not disabling at first, but the strain which Towle suffered in his back became progressively worse as it continued to be aggravated by his employment to the extent that within at most five or six weeks his internal injury had become totally disabling.

The injury was received while the employee was doing the work for which he was employed, and, in addition thereto, his injury was a natural incident to the work. To be compensable an injury must be one of the risks connected with the employment, flowing therefrom as a natural con-

sequence, and directly connected with the work. Gooch's Case, 1929, 128 Me. 86, 145 A. 737.

Even if the strain did not arise out of an unusual, undesigned, unexpected or sudden external occurrence in the course of the employment, nevertheless, the ensuing disabling injury would necessarily be an accidental one under the law, because of the unusual, undesigned, unexpected or sudden results of the strain. Mamie Taylor's Case, 1928, 127 Me. 207, 142 A. 730. The initial strain in this case was itself sudden, unusual, and unexpected as these terms are used in Workmen's Compensation cases and constituted a personal injury by accident, even though the same may not have been compensable for lack of disablement. When the strain incapacitated the employee within a short time from its first occurrence by reason of its progressive aggravation due to the effect of the employment upon the weakened internal structural resistance of his body, the accidental injury became compensable.

An internal injury that is itself sudden, unusual, and unexpected is none the less accidental because its external cause is a part of the victim's ordinary work. *Moores,* supra; Mamie Taylor's Case, supra; Brown's Case, 1924, 123 Me. 424, 123 A. 421, 60 A.L.R. 1293.

In the recent case of Matthews v. R. T. Allen & Sons, Inc., Me., 1970, 266 A.2d 240, we said:

"The Workmen's Compensation Law represents a relatively recent concept of responsibility without negligence. While the early cases usually concerned accidental injuries where an external force was applied to an external portion of the body, our own Court decided early in the development of our law that the term injury by accident includes incidents where internal parts of the physical structure break down under external force, *including the stress of labor.* While this may more dramatically occur as a result of a slip, a fall or a single unusual strained

effort, *we have found other such internal breakdowns to have resulted from the usual work which the workman was performing in his usual, normal way."* (Emphasis supplied.)

In *Matthews,* after reexamining the holding of this Court in McNiff v. Town of Old Orchard Beach, 1942, 138 Me. 335, 25 A.2d 493, we stated:

"We do not construe this opinion to be a holding that the Petitioner had to satisfy the Commissioner that the injury was suffered at a particular moment while throwing up a particular shovelful of dirt or *to hold that a weakness in the bodily structure which has gradually worsened and which breaks down finally from the stress of usual work may not be termed an injury by accident."* (Emphasis mine.)

In *Matthews,* we reaffirmed the holdings of Hull's Case, 1925, 125 Me. 135, 131 A. 391, and Swett's Case, 1926, 125 Me. 389, 134 A. 200, to the effect that "if stress of labor aggravates or accelerates the development of a preexisting infirmity causing an internal breakdown of that part of the structure a personal injury by accident occurs."

Towle's initial sprain, which occurred after he resumed in March of 1972 his seasonal operation of the sweeper, ensued in consequence of his doing his usual work in a usual manner. It may be said to be a matter of common knowledge that the operation of heavy motorized equipment which ordinarily results in no ill effect may on occasion produce a strain or sprain of the muscles or ligaments of the operator. When the injury is shown to be related to or to have been effected by the employment, that is to say, if but for the employment the injury would not have occurred, the statutory prerequisites of an accidental injury have been met. The mere absence of an extraordinary effort, strain, or exertion, on the part of an employee in his employment does not necessarily foreclose his sustaining a personal injury by accident arising out of and in the course of

his employment pursuant to 39 M.R.S.A. § 51. Ciocca v. National Sugar Refining Co. of New Jersey, 1940, 124 N.J.L. 329, 12 A. 2d 130.

In Bernier v. Coca-Cola Bottling Plants, Inc., 1969, Me., 250 A.2d 820, this Court quoted with approval the statement in Larson's Workmen's Compensation Law § 12.20 to the effect that

"Preexisting * * * infirmity of the employee [such as a weak back] does not disqualify a claim under the 'arising out of employment' requirement if the employment aggravated, or combined with the * * * infirmity to produce the * * * disability for which compensation is sought."

Thus, the stirring into activity of a dormant condition of weakness of a person's back by a strain incident to that person's work constitutes a compensable accident.

The policy of our Workmen's Compensation Act is to protect the employee against risks which are created by and incidental to the employment. Brown v. Palmer Construction Company, Inc., 1972, Me., 295 A. 2d 263. In order to carry out the manifest and general humanitarian purpose of the Act, a broad and liberal interpretation of its provisions is mandated as against a hypertechnical construction which can only lead to a frustration of the ends of such legislation. Estabrook v. Steward Read Co., 1930, 129 Me. 178, 151 A. 141; Harry Scott's Case, 1918, 117 Me. 436, 104 A. 794.

As Professor Larson says, "by accident" is now deemed satisfied in most jurisdictions "either if the cause was of an accidental character or if the effect was the unexpected result of routine performance of the claimant's duties," and accordingly, "if the strain of claimant's usual exertions causes collapse from heart weakness, *back weakness,* hernia and the like, the injury is held accidental." (Emphasis supplied.) Larson, Workmen's Compensation Law, §§ 38.10, 38.20, 38.30.

Where the stress of labor induces or aggravates an internal strain or breakdown, there is a personal injury by accident, whether the physical disablement is the result of cumulative employment exertions or the effect of a single incident. Towle's disability was clearly an unintended consequence of the employment. The statutory term "accident", if liberally construed, will encompass a disabling sprain which is conceded to be causally related to the employment, even though no specific incident of the work can be pointed out as the particular onset of the injury. See, Jones v. California Packing Corp., 1952, 121 Utah 612, 244 P.2d 640; Ortiz v. Ortiz & Torres Dri-Wall Company, 1972, 83 N.M. 452, 493 P.2d 418; Hudson v. Owens, 1969, Ky., 439 S.W.2d 565; McIver v. State Highway Commission, 1967, 198 Kan. 678, 426 P.2d 118; Lewis v. Department of Law Enforcement, 1957, 79 Idaho 40, 311 P.2d 976; "An accidental injury within the meaning of the Workmen's Compensation Act need not be attributable to one particular event, but may arise progressively from the cumulative effect of a series of exertion episodes." H. J. Jeffries Truck Line v. Grisham, 1964, Okl., 397 P.2d 637; Farmers Co-Op Exchange of Weatherford v. Krewall, 1969, Okl., 450 P.2d 506.

We do not believe that Towle's condition is the result of an occupational disease, which under 39 M.R.S.A. § 183 is defined as follows:

"Whenever used in this law, the term 'occupational disease' shall be construed to mean only a disease which is due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process or employment and which arises out of and in the course of employment."

Indeed, there is no evidence in this record that operators of sweepers were more likely to develop diseases of the back gradually caused by their occupation anymore than drivers of tractors, tractor-trailers or other heavy motorized equipment may be. Nor does the record show that all drivers of sweepers are alike constantly exposed to

similar strain as befell the petitioner in this case. We cannot say as a matter of law that Towle's condition is the usual, peculiar or characteristic incident or result of the particular employment in which he was engaged. To the contrary, the cumulative effect of the series of stresses which Towle's employment caused his back to absorb produced the ultimate disabling injury which was an unintended and unexpected occurrence or accidental injury. American Maize Products Co. v. Nichiporchik, 1940, 108 Ind.App. 502, 29 N.E.2d 801.

On appeal from a decree of an Industrial Accident Commissioner the Commissioner's findings of fact are final if they are supported by competent evidence and reasonable inferences which may be drawn therefrom. 39 M.R.S.A. § 99; Soucy v. Fraser Paper, Limited, 1970, Me., 267 A.2d 919. Disability due to an industrial accident, the extent thereof, and the issue of causal relation between the accident and the disability are questions of fact, and the compensation claimant has the burden of proof in establishing the same. Baker's Case, 1947, 143 Me. 103, 55 A.2d 780;

MacLeod v. Great Northern Paper Company, 1970, Me., 268 A.2d 488.

The Commissioner, however, in arriving at his conclusions, must be guided by legal principles and, if he fails in this, he commits an error of law which the Law Court is authorized to correct on appeal. Robitaille's Case, 1943, 140 Me. 121, 34 A.2d 473; Crosby v. Grandview Nursing Home, 1972, Me., 290 A.2d 375.

The Commissioner's decree dismissing the petition is based on his finding that he was "unable to find that the condition [of claimant Towle] resulted from accidental injury." Since he did find that the condition most probably arose out of and in the course of Mr. Towle's employment as a sweeper operator, it is obvious that his conclusion there was no proof of an accidental injury was based on the fact which he related in his decree that "no specific incident caused this condition." In so doing, he misapplied the law, and, as a result thereof, I would sustain the appeal and remand the case to the Commission for the entry of the proper award of compensation.