**Rodney C. RINES**

v.

**Keith B. SCOTT and Travelers Insurance Company.**

Supreme Judicial Court of Maine.

Argued March 16, 1981.

Decided July 20, 1981.

Mitchell & Stearns, John A. Woodcock, Jr., Gary F. Thorne (orally), Bangor, for plaintiff.

Norman & Hanson, Stephen Hessert (orally), Portland, for defendants.

* GLASSMAN, J., sat at argument and participated in conference, but died before the opinion was adopted.

Before McKUSICK, C. J., GODFREY, NICHOLS, GLASSMAN * and CARTER, JJ., and DUFRESNE, A. R. J.

DUFRESNE, Active Retired Justice.

Rodney C. Rines appeals from the *pro forma* decree of the Superior Court (Hancock County) affirming a decision of the Workers' Compensation Commission rendered on April 16, 1980. That decision dismissed Rines' petition for award of compensation for a personal injury sustained on the job while in the employ of the defendant, Keith B. Scott. The Commissioner gave as his reason for dismissing the petition the employee's failure to file it within two years from the date of the injury pursuant to 39 M.R.S.A. § 95.

The employee maintains the Commissioner committed error of law in ruling that the two year period of limitation for filing his petition for award of compensation commenced to run from June 19, 1975, when on that date he accidently wrenched his left knee in a fall from a drilling platform while working for the defendant in Deer Isle. The employee contends that the statutory expression "within 2 years after the date of the injury" means within 2 years, not from the time of the accident or occurrence causing injury, but from the time the injury becomes incapacitating or disabling. We disagree and affirm the judgment below.

### 1. Construction of statute concerning time limitations

Our problem is to determine and give effect to the intent of the Legislature in its use of the term "injury" in section 95. The statutory history of legislation upon a particular subject matter may be taken into consideration in ascertaining legislative intent. *Finks v. Maine State Highway Commission*, Me., 328 A.2d 791, 797 (1974). In interpreting the language used in a particular statute, the history of the legislation on the same subject matter may throw light on the meaning of the particular phrase or wording to be construed. *Steele v. Smalley*, 141 Me. 355, 358, 44 A.2d 213, 214 (1945).

We have in mind the legislative admonition that, to effect the humanitarian purposes which the Workers' Compensation Act was intended to achieve, we bring to the statute a liberal construction in favor of the employee. 39 M.R.S.A. § 92. *Gilbert v. Maheux*, Me., 391 A.2d 1203, 1205 (1978); *Ross v. Oxford Paper Co.*, Me., 363 A.2d 712, 716 (1976). Nevertheless, we must not lose sight of the fact that the legislative mandate to apply a liberal interpretation to the Act will not justify judicial creation of rights or liabilities under the guise of construction. *Delano v. City of South Portland*, Me., 405 A.2d 222, 225 (1979).

Upon its enactment in 1915 (P.L.1915, c. 295), our Workers' Compensation Act provided compensation to employees for personal injury *by accident* arising out of and in the course of their employment (section 11), when as a result thereof the employee was incapacitated from earning full wages beyond a stated period of time (initially, two weeks—section 9; now the waiting period being 3 days with full compensation if incapacity continues for more than 14 days —39 M.R.S.A. § 53). But any proceeding for compensation for such work-related injuries was barred, unless *notice of the accident* had been given to the employer within thirty days *after the happening thereof*, and unless the employee's *claim for compensation with respect to such injury* had been made to the employer within one year *after the occurrence of the same* (section 17), and unless an agreement or *the petition for award of compensation* had been filed with the Commission within two years *after the occurrence of the injury* (section 39). Notice was excused, however, if it were shown that the employer had knowledge of the injury, or that failure to give notice was due to accident, mistake or unforeseen cause (section 20).

In *Hustus' Case*, 123 Me. 428, 123 A. 514 (1924), the stated section 17 was construed, and this Court held that, by reason of the contrasted use of the terms "accident" and "injury," the Legislature had indicated two distinctive time limitations which did not necessarily begin to run at the same time, 1) the 30 day notice of the accident running from the time of the accident, but 2) if the employee was not incapacitated for work by the accidental injury at the time of the accident, then the one year period within which to make the claim of compensation to the employer (as distinguished from the filing of a petition for award of compensation) commencing to run only from the time the employee became incapacitated by reason thereof.

The 1929 Legislature apparently took notice of this Court's construction of the compensation statute in *Hustus' Case, supra.* It crystallized the Court's distinction by requiring explicitly that the employee's claim of compensation be made to the employer *within six months after the date of incapacity*, but provided that the employee's claim of compensation would be barred unless an agreement or a petition for award were filed *within one year after the date of the accident*; this was a clear change from the previous statute which used the phraseology—within two years after the occurrence of the injury. Also, notice of the accident was excused if it were shown that the employer had knowledge of the accident, while previously the statute read "had knowledge of the injury." See Public Laws, 1929, c. 300, §§ 19, 20 and 32. Thus, it would appear that it was the intention of the Legislature at that time to limit the ruling in *Hustus' Case, supra*, to the period within which the employee was required to make his claim of compensation to his employer, and in no way would it be applicable to the time period within which an agreement or petition for award had to be filed, since in the latter case, the time of commencement of the period was specifically stated to be the date of the accident.

The 1939 Legislature took out of the compensation statute the requirement that the employee make his claim of compensation to his employer within six months after the date of incapacity. See Public Laws, 1939, c. 276, s. 9. Thus, after this amendment the time limitations affecting an employee's claim of compensation were the 30 day notice of the accident and the one year filing of an agreement or petition for award, and

both periods were by statute made to commence from the time of the accident.

Except for extending the time to file an agreement or petition for award of compensation from one year to two years *after the date of the accident* (P.L.1965, c. 408, s. 9), the Legislature consistently continued to anchor the commencement of the time periods within which to give notice and file the petition for award to the date of the *accident*. But the One Hundred and Sixth Legislature at its special session in 1974 sought to delete from the compensation law all references to the term *accident* and to replace it by the term *injury*. Thus, at the time of the petitioner's accidental wrenching of his left knee, the time limitations provisions of the compensation law read as they had been amended by Public Laws, 1973, chapter 788, as follows:

39 M.R.S.A. § 63. Notice of injury within 30 days

No proceedings for compensation under this Act, except as provided, shall be maintained unless a notice of the injury shall have been given within 30 days after the date thereof . . .

39 M.R.S.A. § 95. Time for filing petitions

Any employee's claim for compensation under this Act shall be barred unless an agreement or a petition as provided in section 94 shall be filed within 2 years after the date of the injury, * * *.

The employee argues that this wholesale change in the language of the statute in the use of the term "injury" for the term "accident" indicates a legislative purpose to revert to the *Hustus* concept of injury— meaning an incapacitating injury—, at least insofar at it is made applicable to the two year period of limitations within which the petition for award of compensation must be filed. We disagree.

It is our opinion that the 1973 Legislature, as we indicated in *Canning v. State Department of Transportation*, Me., 347 A.2d 605, 608 (1975), by deleting from the entire compensation legislation the term "accident" for the term "injury," merely intended to expunge from the Act the criterion that the injury be received "by accident" to avoid results such as the one represented by our later decision in *Towle v. Department of Transportation, State Highway*, Me., 318 A.2d 71 (1974). As stated in *Brown's Case*, 123 Me. 424, 425, 123 A. 421 (1924), "[b]y all authorities an occurrence to be accidental must be unusual, undesigned, unexpected, sudden." The Legislature, in excising from the phrase "injury by accident arising out of and in the course of his employment" the words "by accident," definitely wanted to extend workers' compensation benefits for any injurious impairment to the employee's body, whether permanent or temporary, without regard to the occurrence being unusual, undesigned, unexpected or sudden, provided it was work-related.

The 1973 legislation which modified the language of the reference section 95 was enacted by the One Hundred and Sixth Legislature at a 1974 special session through legislation entitled An Act to Correct Errors and Inconsistencies in Public Laws. *See* Public Laws, 1973, chap. 788, §§ 214–239, both inclusive. The alleged errors or inconsistencies in the public laws in relation to the Workers' Compensation Law had been introduced by the One Hundred and Sixth Legislature, when at its regular session, it had deleted the words "by accident" from section 52 of the Act, a section which enables the claimant to receive certain hospital and medical services and aids and assistance in rehabilitation, without deleting it from section 51, the fountainhead section of the compensation law, nor from any other section where these words appeared. Ironically, chapter 788 omitted to extend its intended corrective fulfillment to section 51, which led this Court to say in *Canning, supra*, at 608 that this Court is required to effectuate the intent of the Legislature, *not its oversights*. *See also* Public Laws, 1975, chap. 480.

Did the 1973 Legislature intend a liberalization of the criteria for qualification for benefits for industrial injuries in respect to the time limitations sections of the statute beyond the initial attempt to extend coverage to include work-related injuries where

the injured employee was not the victim of an "accident" within the meaning of the Act? We think not. As indicated by Mrs. Baker of Orrington, House Chairman of the Joint Standing Committee on Judiciary, as she addressed the House in relation to the pending bill to Correct Errors and Inconsistencies in the Public Laws that had come to the attention of the Director of Legislative Research since the end of the regular session, the Committee had decided that any one member of the Committee on objection could keep out of the Committee's bill any amendment of a substantive nature. Legislative Record-House March 26, 1974 at page 2314. That the Legislators did not intend a radical change in the Workers' Compensation Act beyond the already enacted modification of that legislation presented by the elimination of the accident aspect of work-related injuries would seem to be a proper inference to be made from these stated efforts to reject any amendment of substance as part of the legislative package to correct errors and inconsistencies.

Furthermore, the construction suggested by the employee which would start the statutory period of limitations from the time the work-related injury became disabling instead of from the time of the occurrence of the industrial incident causing the injury would to a great extent place the terminal date of litigation in a state of uncertainty. Recognizing that some fixed terminal date of litigation is necessary to support highly accurate actuarial statistics needed by insurance companies to maintain a firm and well defined rate base consistent with loss experiences, it seems obvious to us that the Legislature would not have made such a substantial change in the manner of determining the starting point of the time requirements in giving notice of the injury or in filing the petition for award of compensation therefor as it existed prior to the enactment of the reference Act to Correct Errors and Inconsistencies without using clear language to that effect. See *Norton v. Penobscot Frozen Food Lockers, Inc.*, Me., 295 A.2d 32, 35 (1972); *Prudential Ins. Co. of America v. Insurance Commissioner*, Me., 293 A.2d 529 (1972). We hold that the incident triggering a personal injury arising out of and in the course of employment, when present and subjectively connected together, continues to mark the point of commencement of the time limitations respecting the 30 day notice of the injury under section 63 and the 2 year period within which the petition for award of compensation must be filed pursuant to section 95, in the same way as the occurrence of the "accident" governed before the change of the statutory language.

## 2. Factual considerations

In the instant case, the employee sustained the injury to his left knee in the late afternoon of June 19, 1975. Disabled for the balance of the working day, he was taken that evening by a fellow employee to St. Joseph's Hospital in Bangor where he was examined by a physician in the emergency room of the hospital. Later the same evening, he went to the home of his employer to inform him of the accident, the injury to his knee and his trip to the hospital on account thereof.

The employee returned to work two days after suffering his injury, but continued to experience considerable pain in his knee. He testified that his knee "snapped" continuously both at work and off the job. To prevent this, he obtained a knee brace which he wore at work. In addition, Rines testified that his knee hurt to such an extent that he was often forced to apply heat to it in an effort to relax the muscles and reduce swelling. Thus, the only manner by which the employee could continue to function in his job was with considerable pain and discomfort.

With respect to findings of fact, our review of a decision of the Workers' Compensation Commission "is narrow, requiring our deference to the Commissioner's conclusions if they are supported by competent evidence." *Dunton v. Eastern Fine Paper Co.*, Me., 423 A.2d 512, 517 (1980). Of course, our deference to the Commissioner's findings of fact does not extend to his conclu-

sions of law, which, if erroneous, are always subject to correction by this Court.

Our review of the Commission's ultimate determination, that Rines sustained a compensable injury from the fall in 1975, reveals no error in that determination. As we have held previously, "[i]t is basic to workers' compensation law that an award of compensation can only be made for disabilities which 'arise out of' and are sustained 'in the course' of employment." *Hamm v. University of Maine*, Me., 423 A.2d 548, 550 (1980). In the case at bar, there is no doubt that Rines' injury was sustained while he was in the employ of defendant. It is the employee's contention that while he may have suffered an injury while in the employ of defendant on June 19, 1975 when he fell from the drilling platform in Deer Isle, his petition for compensation more than two years after that date is still statutorily timely, because, as he alleges, it was only at that point that he became "incapacitated." In this, he was in error, as we have already explained. Rines' post-injury employment clearly reflected a diminished work capacity. *See Mailman v. Colonial Acres Nursing Home*, Me., 420 A.2d 217, 220 (1980).

### 3. *Triviality of injury and mistake of fact*

■ The employee further contends that he is excused from compliance with the strict time strictures of section 95, because, as provided therein,

> "[i]f the employee fails to file said petition within said period because of mistake of fact as to the cause and nature of the injury, he may file said petition within a reasonable time."

Rines argues that his continued work at his job following the injury to his knee on June 19, 1975, points up the triviality of the resulting condition, that he should not be penalized for his efforts to remain actively employed and that he was laboring under a mistake of fact respecting the nature and extent of his injury which should exempt him from meeting the filing requirements of section 95.[1] The record disputes this contention.

At the Commission hearing the employee, when asked if he felt whether the problems he had had with his knee were caused by the 1975 injury, responded in the affirmative. Specifically, he testified that before the injury he "never had that problem with the knee before that." The employee sought medical attention for his continuing problems in February of 1977 after his left knee "collapsed" while walking. After several tests were performed on his knee, Rines had the left medial meniscus removed on April 12, 1977. Dr. James F. Lawsing, who performed the surgery, testified that Rines was "essentially asymptomatic" following the surgical procedure.

We recognize that the case at bar is unusual in that, despite the fact the employee was in considerable pain, he continued to work. It was only when the employee lost all use of his knee that he sought medical assistance. Notwithstanding the employee's admirable attempt to continue to be a productive worker, we cannot say that his injury of 1975 was not of a compensable nature. The following from Professor Larson's treatise on the law of Workers' Compensation accurately describes the situation here:

> There is another rather exceptional type of case, discussed earlier, in which there

---

1. We note that in 1977 the Legislature did provide protection for workers who although injured in employment may not be incapacitated for work by reason of the injury. This legislation was not in effect at the time of Rines' injury, and therefore is not applicable to his case. P.L.1977, chap. 437, s. 4 (39 M.R.S.A. § 94).

If following an injury which causes no incapacity for work the employer and employee reach an agreement that the employee has received a personal injury arising out of and in the course of employment, a memorandum of such agreement signed by the parties may be filed in the office of the commission. Such memorandum shall set forth the names and residences of the parties, the facts relating to the employment at the time of the injury, the time, place and cause of the injury, and the nature and extent of the injury. Any member of the commission shall be empowered, without the necessity of the filing of a petition for award, to render a protective decree based upon such memorandum.

can be compensability without discontinuance of work; an injured man, especially in time of labor shortage, may be able and may prefer to hold on to a job which pays perhaps several times as much as he could collect in workmen's compensation. This should not, however, excuse him from giving notice of the injury, nor from making a timely claim for compensation if he wants to claim compensation at all. In other words, he should not be allowed, with full knowledge of his compensation rights, to delay the employer's opportunity of investigating the injury indefinitely, for the purpose of clinging to his full-wage position as long as the labor market permits.

3 A. Larson, The Law of Workmen's Compensation, § 78.51 at 124, (1976).

The question of a worker's desire to refuse to submit to the onset of a disabling injury and to continue working at full capacity notwithstanding any accompanying pain and discomfort attendant the job performance presents difficult policy considerations in reaching legislative intent underlying the respective provisions of the compensation law. On the one hand, the employee's willingness to continue to be a gainful member of the work force instead of displaying a ready reliance upon workers' compensation benefits is to be encouraged. On the other hand, there needs be some type of limitation on the time a worker can delay filing his compensation claim, once he becomes aware of it. Section 95 of the Act seeks to reconcile the injured party's interest in his entitlement to compensation with the responsible party's interest in a terminal date to litigation. *Pino v. Maplewood Packing Co.*, Me., 375 A.2d 534, 537 (1977). The Legislature has explicitly conditioned a worker's exemption from the two-year limitation for filing his petition for award of compensation upon "mistake of fact as to cause and nature of the injury," which, as we said in *Pino*, contemplates those situations where the injury is latent or its relation to the work-related incident is unperceived. They do not include instances where, as here, the employee knows of the injury and its cause. Id. at 537.

In the instant case, Rines knew from the beginning that he had been injured at work; he was aware of its disabling effect beyond his experiencing pain and discomfort, since he had to wear a knee brace at work to prevent the continuous "snapping" of his knee. Oftentimes he had to apply heat to relax the muscles and reduce the swelling. The cause and nature of his injury was clearly apparent throughout, even though the exact ultimate diagnosis may not have been known to him. The case is controlled by *Pino v. Maplewood Packing Co., supra; Farrow v. Carr Bros. Co., Inc.*, Me., 393 A.2d 1341 (1978); and *Crawford's Case*, 127 Me. 374, 143 A. 464 (1928). *Cf. Upham v. Van Baalen Pacific Corp.*, Me., 420 A.2d 1229 (1980). There was no mistake of fact as to the cause and nature of the injury within the meaning of section 95, since the employee's ailment did not involve a latent injury or one unperceived by the employee as being related to his fall on June 19, 1975. Under such circumstances, the case is distinguishable from the cases of *Dunton v. Eastern Fine Paper Co., supra*; and *Francis v. H. Sacks & Sons*, 160 Me. 255, 203 A.2d 42 (1964).

We cannot speculate as to the possible reasons for Rines' failure to file his petition for compensation within the time requirements of section 95, but we can state with certainty that the Commissioner was not clearly erroneous in his determination that Rines suffered a compensable injury on June 19, 1975 and that his petition for compensation was not timely.

The entry will be:

Appeal denied. *Pro forma* decree of the Superior Court affirmed.

It is further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

McKUSICK, C. J., concurring.

GODFREY, J., with whom NICHOLS and CARTER, JJ., join, concurring in separate opinion.

GODFREY, Justice, concurring with whom NICHOLS and CARTER, JJ., join.

I concur in the result on the plain and simple ground given by the Commissioner; namely, that Rines sustained his injury on June 19, 1975, and did not file an agreement or a petition within two years thereafter. From the evidence of record, described in the majority opinion, it is clear that Rines was aware he had been hurt as a result of his fall and that his injury was work-related. In fact, he notified his employer of the injury quite promptly. This is not a case where serious symptoms, including pain, did not develop until considerable time had elapsed after the work-related incident occurred. I see no necessity for reaching the question in this case whether the term "injury," as used in the pertinent limitation provision of section 95, must be construed as having the same meaning as the term "accident" under the prior law. As a matter of *fact*, in this case accident and injury occurred at the same time.